### HOAD et al. v. ARITEX OIL CO.*
(No. 1357.)

(Court of Civil Appeals of Texas. El Paso. June 15, 1922. Rehearing Denied June 28, 1922.)

1. **Trial** ⬡60(1)—Exclusion of hypothetical evidence as to value of goods converted held not error.

The exclusion of evidence based on hypothetical questions as to the value of the machinery converted considering its depreciation, in view of the fact that the evidence offered in no way referred to or was connected with the identical property involved, and amounted only to a predicate for use of other evidence which was not offered, was not error.

2. **Conspiracy** ⬡19—Not necessary to show actual physical possession to show conversion if evidence shows a conspiracy to convert.

In an action by a corporation against its employees for conspiracy to convert and converting oil-drilling machinery, it was not necessary to show that all of the employees were in actual physical possession of the property in order to show a conversion, if the evidence showed a conspiracy to convert.

**3. Trover and conversion ⟨Key⟩40(6)—Evidence held not to show machinery converted was new.**

In an action by a corporation against its employees for converting oil-drilling machinery, evidence *held* insufficient to show that the machinery taken was new machinery.

**4. Conspiracy ⟨Key⟩19—Evidence held insufficient to show that two defendants were concerned in conversion of property.**

In an action by a corporation against its employees for a conspiracy to convert and converting oil-drilling machinery, evidence *held* insufficient to show that two of the employees were concerned in either a conspiracy to convert or a conversion of the property.

On Motion for Rehearing.

**5. Conspiracy ⟨Key⟩19—Date of conspiracy should be proved with some degree of certainty.**

In an action for a conspiracy to convert and converting property, the date of the conspiracy should be proven with some degree of certainty, since actual declarations, made prior to the formation of the conspiracy or after the accomplishment of the conversion, are inadmissible, unless so closely connected with the object as to form a part of the res gestæ.

**6. Conspiracy ⟨Key⟩19—Finding that two defendants, one a bookkeeper and the other a field agent, had duty to account for machinery converted held not supported by evidence.**

In an action by a corporation against employees for conspiracy to convert and converting oil-drilling machinery, a finding that two employees had contracted and were in duty bound to account to the corporation for all of the property, funds, etc., was not supported by evidence that one was a bookkeeper and that another was a field agent, without any evidence as to their duties under the employment, or as to their knowledge of uses being made of the converted property.

Appeal from Distict Court, Stephens County; C. O. Hamlin, Judge.

Action by the Aritex Oil Company against D. S. Hoad and others. From judgment for plaintiff, defendants appeal. Reversed and remanded.

Chastain, Judkins & Chastain, of Eastland, and Howth & Adams, of Fort Worth, for appellants.

Carl P. Springer, of Eastland, and Mackey & Ritchey, of Breckenridge, for appellee.

WALTHALL, J. The Aritex Oil Company, a corporation, brought this suit against D. S. Hoad, W. O. Mullins, Bertha Bethel, and C. W. Harkrider, to recover of the first three above named the value of the personal property described in the petition, and consisting of certain oil well equipment and supplies, alleging a conspiracy to convert said property to their own use, and conversion of said property on their part, and that it have a lien upon certain oil well equipment and supplies on the Harkrider lease, on which it is alleged said oil well equipment and supplies are being used for drilling an oil well, and placed on the Harkrider lease by said three first named defendants, and a lien upon the leasehold interest in the Harkrider lease belonging to said three defendants. In the alternative they pray that if the said personal property did not enter into the drilling of the Harkrider well, and the use of said property did not form a part of the consideration for their interest in the Harkrider well, then the plaintiff have a personal judgment for the value of the said personal property so taken and converted by them and not used in the drilling of said well.

Harkrider filed a cross-action against the plaintiff oil company. Hoad, Bethel, and Mullins answered by general denial and several special pleas and defenses, but upon the trial defendants offered no evidence, but on the conclusion of the plaintiff's evidence moved for a judgment in their favor, which was overruled, and to which they excepted.

The case was tried before the court without a jury. The court made findings of fact which, we think, sufficiently reflect the issues tendered in the pleadings. The trial court's findings are as follows:

"(1) That the plaintiff, Aritex Oil Company, is a corporation organized and existing under laws of the state of Arizona, and that at the times referred to in its petition, it had and now has a permit to transact business within the state of Texas.

"(2) That during the month of January, 1920, and for several months subsequent thereto, the defendants D. S. Hoad, Bertha Bethel, and W. O. Mullins were employees in the service of the plaintiff in connection with its oil operations in Eastland and Stephens counties, Tex., the said Hoad as superintendent and manager in charge of said business, the said Bertha Bethel as agent, and the said Mullins in the capacity of bookkeeper and accountant. That each of the said defendants, by the acceptance of the compensations paid by plaintiff, contracted and agreed to use their time and best skill and ability in conducting said business for the benefit of plaintiff.

"(3) That plaintiff is the owner of an oil and gas mining lease upon a part of section 7 of block 5 of the Texas & Pacific Railway Company lands in Stephens county, together with certain oil well tools, machinery, fixtures, equipment, and supplies connected therewith, and that plaintiff, subsequent to the 2d day of January, 1920, authorized and directed the defendant Hoad, as its superintendent, agent, and manager, to proceed with the drilling of a well for oil and gas upon said land for the benefit of plaintiff, and out of the funds and upon the credit of plaintiff to purchase such additional tools, machinery, equipment, and supplies, and pay for such labor as might be necessary or required for use in the drilling and completion of said well.

⟨Key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(4) That while so in the employ of plaintiff and while engaged in plaintiff's work and looking after plaintiff's business the defendant D. S. Hoad, at the same time, without the knowledge or consent of plaintiff, engaged in business for his own personal benefit and that of his codefendants Bertha Bethel and W. O. Mullins, in this: That on or about the 12th day of October, 1920, the said D. S. Hoad entered into a contract with defendant C. W. Harkrider for the furnishing of the necessary tools, labor, etc., and the drilling of a well for oil and gas upon a tract of land held under lease by the said Harkrider upon a part of the southeast quarter of the northwest quarter of section 8, of block 5, Texas & Pacific Railway Company land, in which land and lease plaintiff had no interest.

"(5) That under the terms of his employment with plaintiff, the defendant Hoad had charge of plaintiff's property and funds, and had full authority to purchase equipment and supplies and to pay for labor out of the funds belonging to plaintiff, and that he and the said defendants Bertha Bethel and W. O. Mullins had contracted, agreed, and were in duty bound to account to plaintiff for all of said property and funds, and to devote their whole time to the said work and business of plaintiff.

"(6) That the defendants Hoad, Bethel, and Mullins, for the purpose of obtaining machinery, tools, equipment, and supplies for use in the drilling of said well, which the said Hoad had contracted to drill for his own personal use and benefit and for that of said Harkrider and others, the said D. S. Hoad, Bertha Bethel, and W. O. Mullins did take into their possession the following items of property belonging to plaintiff, which are enumerated in paragraph No. 15 of plaintiff's first supplemental petition, to wit: [Here the court enumerated the articles indicated.]

"(7) I find that the above-described property, at the time and place so taken by the defendants, was of the reasonable market value of $17,531.78, and that the defendants D. S. Hoad, Bertha Bethel, and W. O. Mullins converted the same, or the proceeds thereof, to their own personal use and benefit, and that plaintiff was thereby damaged in the said amount.

"(8) That, further, the defendants Hoad, Bethel, and Mullins did purchase, or cause to be purchased for the account of plaintiff, and either paid for themselves out of the funds of plaintiff, or caused plaintiff to pay for, the following items of property, as set out in paragraph 14 of plaintiff's first supplemental petition, to wit: [Here the court enumerated the articles indicated.]

"(9) That the last above described property was purchased and paid for by funds belonging to plaintiff; that the same was taken and converted by the defendants D. S. Hoad, Bertha Bethel, and W. O. Mullins to their own use and benefit, and that at the time and place so taken and converted said property was of the reasonable market value of $3,233.87, and that thereby plaintiff was damaged in the said amount.

"(10) I find that of the property belonging to plaintiff, the defendants, Hoad, Bethel, and Mullins, on or about the 28th day of April, 1920, sold to Mark Brannen 1,282 ft. 8¼"

casing, for which they received the sum of $2,654.56; that on or about the 14th day of June, 1920, said defendants sold to Western Ex-Keoughan-Hurst Syndicate 7,319 feet of tubing, for which they received the sum of $3.-639.96; that on or about the 24th day of February, 1920, said defendants sold to Jarecki Manufacturing Company 899 feet 9 inches of 5³/₁₆-inch casing (Byers 17 pounds) for which they received the sum of $1,214.66; and that on or about the 9th day of October, 1920, said defendants sold to Haile & Knight 1,883 feet 3 inches of tubing, for which they received the sum of $646.89; the total of said sales aggregating the sum of $8,156.07.

"(11) I find that the said property so sold by the defendants was the property of the plaintiff; that the said defendants received the proceeds thereof, and converted the same to their own use. I find further in this connection, however, that the said property so sold by the defendants has been included in the property listed under paragraph numbered 8 of these findings, as having been converted by the said defendants, and therefore the same is not here listed as a separate item or an additional charge against the said defendants.

"(12) I find that the total value of the property of the plaintiff which was converted by the defendants Hoad, Bethel, and Mullins amounted to the sum of $20,665.65, and that by reason of such conversion plaintiff has been damaged in that amount.

"(13) I find that the plaintiff is not entitled to a lien upon the said oil well being drilled by the said D. S. Hoad for himself and the defendant Harkrider, nor upon the tools, machinery, equipment, or supplies connected therewith, nor upon the said lease or the products of the said well.

"(14) I find that the defendant C. W. Harkrider was not a party to the said collusion and conspiracy between defendants Hoad, Bethel, and Mullins, and that he received no part of the property so converted by them, nor the proceeds thereof; and I further find that the said Harkrider is not indebted to the plaintiff in any sum by reason of any matters alleged in its petition."

The trial court stated the following conclusions as matter of law:

"First. That by reason of their taking and converting of the said property belonging to plaintiff as above found, the defendants D. S. Hoad, Bertha Bethel, and W. O. Mullins are jointly and severally liable and indebted to plaintiff for the value thereof, to wit, the aggregate sum of $20,665.65, and that plaintiff is entitled to a judgment against the said defendants, and each of them, for that amount with interest from the date of judgment at the rate of 6 per cent. per annum.

"Second. That plaintiff is not entitled to any judgment against the defendant C. W. Harkrider for any amount; further, that the said Harkrider is entitled to a judgment against plaintiff for his costs incurred in this suit."

The court sustained exceptions to Harkrider's cross-action, Harkrider refused to amend, and the cross-action was dismissed. The court rendered judgment against Hoad,

Bertha Bethel, and Mullins, each of them in the sum of $20,665.65, with 6 per cent. interest from date of judgment, from which judgment all defendants prosecute this appeal.

[1] Appellants' first proposition is as follows:

"Where plaintiff sued for the value of property alleged to have been misappropriated by defendants, and the testimony shows that the property had been used when appropriated, and the only measure of value pleaded is the value of new goods of like quality, any competent testimony as to its value, when misappropriated, is admissible in evidence."

The second proposition is as follows:

"The court erred to the injury and prejudice of these defendants in permitting the witness E. N. Wood to testify as to the value of the various items of oil well equipment, described in plaintiff's petition, and in not striking said testimony from the record, as fully shown by defendants' bill of exceptions No. 2.".

While the petition classifies the well equipment and supplies purchased by appellee and delivered to defendants into three classes, there is nothing in the pleadings to necessarily indicate that any of the goods were used or secondhand goods. One class, the items set out in paragraph 14 of the petition, shows the material, tools, and supplies to be new when purchased by appellant, Hoad, for appellee, and alleges that, instead of same being delivered by appellants at appellee's well, they were taken by appellants to a well then being drilled by appellant, Hoad, for his own personal benefit, and were used in drilling the Hoad well. In subsequent paragraphs of the petition the lists of goods and the prices or values set opposite each item appear. The petition does not show whether these goods were new or used articles. It does show that one list of the goods with the values stated were taken over from the assets, properties, and business theretofore conducted and operated by and under the name of R. Allyn Lewis, and that same were placed in charge of appellant Hoad, and were unaccounted for by appellants. The list values are the values for new goods. James A. Smith, qualified as an expert accountant, testified:

"You hand me what you state purports to be a summary of inventory for the Aritex Oil Company. I made up that record, that report, by taking the original invoices of purchase found on record in the office of the Aritex Oil Company, and canceled vouchers from the bank showing payment for the bills and invoices. From these bills and invoices of record, I took individual items, making a statement showing items that were purchased, their classification, and their cost. Where items consisted of a single unit, they were appraised as a single unit, but where there were several small items they were grouped in various classifications as to size, and then I would take the total number of articles with their total net cost to the company and compare them with the material that was on hand, purchase of which was not shown. In other words, there was a small quantity of material not supported by any inventory, and was shown in the inventory as not accounted for by purchase. That is, as full and true report of the condition of the Aritex Oil Company as could be had at that date."

It was shown that the final audit was complete as of date December 31, 1920, and the audit made by the witness Smith personally. The witness stated that the inventory was taken by Hoad, Mullins, and witness. That Hoad would call the properties belonging to the company and Mullins and witness would take a list of items as shown and called by Hoad to them, and the final working up of the inventory was made by the witness Smith in connection with the actual inventory and purchase as shown by bills of record as stated in the quotation above. The witness stated that the invoices used in the evidence and in making up the report were obtained from Mullins from the files of the company. The evidence of the witness goes into much detail as to various items as set out in the various invoices and exhibits, and the shortages of items not pointed out by any of appellants in checking up with the inventory actually made on the ground, giving credit, as we understand the record, to appellants on the invoice prices of goods turned back to the company, and charging all of the appellants for the goods not turned back on prices as shown by the invoices. There seems never to have been made a bank reconciliation, and the detailed way of the outlay of appellee's money was traced through the canceled checks. The trial court found that the goods alleged in detail to have been converted, and the dates of conversion, were converted, and that the goods were worth, at the several times of their conversion, the prices as shown by the invoices, listed prices made by the witness Smith in connection with Hoad and Mullins.

Under the two propositions above it is insisted that the goods not turned back to the company, and for which they are charged, were used or secondhand goods, and that it was error in not permitting the witness Smith to testify to the depreciation in value by the uses made of the goods. Appellants offered to prove by the witness Smith that there would be a depreciation in the value of drilling tools and machinery, such as that described in the plaintiff's petition, and the per cent. of depreciation for the first, second, and third years of use, but the evidence offered was hypothetical, and in no way refers to or connects the identical properties involved in the controversy with depreciation in value sought to be shown. The evidence, if admissible at all, amounted only to the laying of a predicate for the use of other

evidence, which seems not to have been offered. The bill of exceptions referred to under the second proposition shows that, while E. N. Wood was testifying on the market value of the items of the oil well equipments involved here, and after he had testified, he stated the values as they were new, and could not testify to the values of used or secondhand values of the same goods. Appellants moved to strike from the record and refuse to consider any of the testimony of the witness Wood as to the values testified to by the witness, for the reason that same was irrelevant, immaterial, and incompetent, as the testimony had already disclosed that all of the equipment appellants were charged with converting were used or secondhand material, and purchased long before November, 1920, and had been used in drilling several oil wells, and that the values of new goods were not an issue, and it was not competent to prove the values of the items converted. The court overruled the motion to strike the evidence. Appellants refer us to exhibits on pages of the record from 40 to 60, both included. Some of these exhibits show the purchase of goods, the items and prices, the dates of the exhibits, extending in time from February, 1920, through November, 1920. The exhibits and invoices referred to do not show whether the goods contained therein were new or used goods when purchased. But whether new or used goods, the inventories disclose only the items and some inventories disclose the prices or values at which the goods were purchased. There is nothing in the exhibits and invoices to indicate whether the goods were new or used when converted, if they were converted.

The witness Smith in testifying said that tools are worn out in the oil field, and that some are broken and lost, lost in the well and occasionally stolen. He also said there would be a difference in the values of new and used goods. The values of all goods charged against appellants and upon which values judgment was rendered were for new goods.

[2] It is insisted by appellants that the evidence does not show that Bertha Bethel or Mullins ever had possession of the properties or converted same. It was not necessary to show that either was in actual physical possession of the properties in order to show a conversion, if the evidence shows a conspiracy to convert the property. The burden was upon appellee to show a conspiracy to convert the property, an actual conversion of the property, and that the goods converted were new goods.

[3] Appellee alleged that in taking over the properties and business of R. Allyn Lewis there was included the items stated in one of the invoices, but the record does not show the several values of these items except as they might be new goods, which does not appear. The evidence shows that Hoad drilled at least one well for appellee, but where or with what machinery and equipment the evidence is silent. The appellee in our judgment does not meet the burden upon it as to the values of the goods for which appellants are charged. While the court found that the total value of the property converted was as stated, that could be true only in the event the several items of property were new goods, which the record does not show.

[4] The evidence does not connect Mrs. Bethel with the possession, management, disposition, use, or control of any of the properties of appellee as described in the petition, nor the proceeds from the sale of any of said property; and the evidence does not connect Mullins with the possession, management, disposition, use, or control of any of said properties, and connects him with some one item of the proceeds of one of the sales, and only as bookkeeper of appellee. The duties of Mrs. Bethel are not disclosed by the evidence, other than as might be inferred from the words "field agent." The evidence does not show what her duties were as field agent; nor does it show that in the discharge of her duties she had anything to do with the possession, management, disposition, use, or control of the properties; nor that in the discharge of her duties she would have knowledge of any uses or disposition made of said properties; nor does it show a failure on her part to discharge any of the duties she owed the company. A careful inspection of the record fails to show, in our opinion, a collusion or conspiracy of Mrs. Bethel with either Hoad or Mullins to convert or to make a wrongful use or disposition of any of the said property or the proceeds from the sales of said property. The same may be said as to Mullins. The only suggestion of any wrongdoing as to Mullins has reference to what is disclosed as to the proceeds of one sale as stated under "Exhibit 39." Exhibit 39 is as follows:

"D. S. Hoad, Eastland, Texas." No. ——.

"Eastland, Texas, April 28, 1920.

"Pay to the order of Aritex Oil Co, $2,-654.56, two thousand six hundred and fifty-four and $56/100$ dollars.

"The City National Bank, Eastland, Texas.

"[In pencil:] Gabler & Brown.

"Mack Brannon."

The payee by indorsement of this check acknowledges payment as below.

"Void if altered. If not correct return."

"1,282 feet 8¼ casing at 2.00."

Indorsements on back:

"Aritex Oil Company, by W. O. Mullins."

"[Perforated:] Paid 4—28—20."

In answer to the question whether the witness James A. Smith, the accountant,

could tell from the audit report, made by witness, whether the Aritex Oil Company received credit for the above check, the witness answered, in substance:

There never had been a bank reconciliation made, and the only way that a check could be traced down would be to have a complete bank statement, showing this check was presented and canceled, "because they never made, or attempted to make, a complete statement of the books. * * * The books do not show that item, and the Aritex Oil Company never received credit for that amount on any of their statements. The instruments you hand me are bank statements furnished me by defendants. The bank statements of the Aritex Oil Company do not show credit for that check. I examined the books especially with reference to that check. * * * The bank [City National Bank of Eastland] paid the check on April 28th. The account belonging to the company was in the name of D. S. Hoad, agent, and this statement shows from April 14 to May 29, 1920. * * * I made the statement that the Aritex Oil Company never received credit for the $2,654.56 check signed by Mark Brannon. I did not make the statement that there was no account of the Aritex Oil Company in the name of Aritex Oil Company in the City National Bank. * * * Here is an account of D. S. Hoad agent of the Aritex Oil Company, dated June 17th, that is the account of the Aritex Oil Company. I would not state that is the only account kept in the City National Bank in the name of the Aritex Oil Company. * * * I did not testify that the check for $2,654.56 was not credited to the account of the Aritex Oil Company, but I said no credit had been made on the records of the Aritex Oil Company, and I take that position; that is not credited to the Aritex Oil Company through their records. * * * The bank records show there was $6,100 deposited to the credit of the company in that account. I did not tell the court about that yesterday, because I was not asked anything about it. I knew D. S. Hoad had deposited more than $6,000 to that account, and said nothing about it, for the reason he might deposit $1,000,000 in an account, and no specific account was given through the records of the Aritex Oil Company to the credit of the Aritex Oil Company, and that does not constitute a credit. It was in the name of D. S. Hoad for the Aritex Oil Company, and D. S. Hoad was the only one who had access to it. I could not get a statement from the bank, because all they had was their charge account. D. S. Hoad had deposited something over $6,-000 during the month of April and May, but not to the credit of the Aritex Oil Company. You ask if I will state that this check marked 'Exhibit 39' was not in that account to the credit of the Aritex Oil Company. I will state it was placed to that account."

It seems to us that while the above might show some confusion in the method of the bookkeeping of the company on the part of Mullins, it does not necessarily show either a conspiracy or a conversion of the proceeds of the check on the part of Mullins. The evidence wholly failing to connect Mrs. Bethel and Mullins with the possession, management, use, or disposition of any of the properties, their liability depends wholly on the issue of a combination or conspiracy to defraud by procuring and purchasing the properties by appellee, and then applying same to their personal use and benefit, so as to make the acts of any one of appellants the acts of all. The evidence fails to show a combination and conspiracy as charged. In view of another trial we think it not amiss to indicate other facts on which the evidence is silent. There is no evidence that the goods were purchased for plaintiff by Hoad or any other person. No evidence that appellee furnished the money to purchase the goods, or that the company took over the property of Lewis, except by the exhibits. There is no evidence in the record that any of the appellants ever had possession, management, use, or made disposition of the goods listed. Simply invoices found in the office of the company do not prove a sale and delivery of them. The findings by the court must have some support in the evidence.

For reasons stated, we have concluded that the case should be reversed and remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee insists in the motion that the evidence is sufficient to support the findings of the trial court as to the values of the goods converted, and as to the fact of the conspiracy as to all three of the appellants to convert the properties, and then their actual conversion.

We have again reviewed the evidence, in the light of appellee's motion, but again reach the conclusion that the evidence is insufficient to show the conspiracy charged, and for that reason insufficient to sustain the judgment rendered against Mrs. Bethel and Mullins. We fully recognize the difficulty of proving a conspiracy to commit a crime or do any unlawful act. But, because difficult of proof, appellee is not relieved of the burden of showing such facts from which the conspiracy may be inferred.

[5] The date of a conspiracy ought to be fixed with some degree of certainty as acts or declarations made prior to the formation of the conspiracy, or after the accomplishment of its object are inadmissible, unless so closely connected with the accomplishment of the object as to form a part of the res gestæ. We have found nothing in the evidence nor in the findings of the court as to the time when a conspiracy was formed, if any was formed, so as to determine whether the acts and things thereafter done by each were in execution or furtherance of the common purpose to convert the property or money of appellee.

[6] In the fifth finding the court finds that Mullins and Mrs. Bethel, under their con-

tract of employment of January, 1920, contracted and agreed and were in duty bound to account to plaintiff for all of said property and funds, etc., but we find nowhere in the record that such was their duty under their employment. The record shows only that Mullins was the bookkeeper, and that Mrs. Bethel was "field agent." The court in the fourth finding finds that Hoad engaged in business for himself and Mullins and Mrs. Bethel in entering into the contract to furnish the necessary tools, labor, etc., to drill the Harkrider well, but there is absolutely no evidence of such fact except as to Hoad. If Mullins and Mrs. Bethel were charged with the duty of looking after the properties of appellee, and by reason of such employment had knowledge of such uses made of appellee's properties by Hoad, and failed to inform appellee of the uses made of its properties, such failure might be taken as a circumstance in determining that they had some interest in the Harkrider well, or had some interest in withholding such information from their employer, but in the absence, as it seems to us, of any evidence as to their duties under their employment, or even knowledge of the uses then being made by Hoad of said properties, we think the court's findings are without any evidence to support them as to Mullins and Mrs. Bethel. The same might be said as to the sixth, seventh, and other findings of the court. We find no evidence in the record to sustain them. As to Mullins and Mrs. Bethel, they are but legal conclusions, based on the inference that a conspiracy had been formed to convert the properties of appellee.

What we have said as to the insufficiency of the evidence to sustain the judgment applies solely to Mullins and Mrs. Bethel.

The motion for rehearing is overruled.