Jung Fu CHIEN, a/k/a Tomas Chien, Individually, et al., Appellants,

v.

Grace CHEN, et al., Appellees.

No. 3-88-006-CV.

Court of Appeals of Texas,
Austin.

Sept. 21, 1988.

John F. Williams, James V. Sylvester, Austin, for appellants.

Elizabeth G. Bloch, Austin, for appellees.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

Tomas Chien and his five partners appeal from three orders for partial summary judgment rendered in their suit against Grace Chen and C. Woodrow Deal.[1] The collective effect of the orders is to adjudge that Tomas and his partners take nothing on causes of action they had alleged against Chen and Deal. We will reverse the summary-judgment orders and remand the cause to the trial court.

## THE CONTROVERSY

Tomas, a citizen of Taiwan residing in California, wished to invest in a certain tract of real property pointed out to him by Chen and Deal. Chen assisted Tomas in negotiating with the owners of the property. Tomas eventually purchased the property in 1981, accepting a conveyance wherein he is the sole grantee named. For serving as broker in the transaction, Deal received a commission. Deal is a licensed real-estate broker, but Chen is not.

In 1984, acting again on the advice of Chen and Deal, Tomas sold and conveyed the property to "S. Wei Lee, Trustee." In fact, Lee purchased the property for Chen, her undisclosed principal. Chen admits concealing from Tomas that she was the actual purchaser in the transaction; she denies, however, that she had any duty to divulge the fact to him. On taking conveyance from Lee, Chen sold and conveyed the property to the Chasewood Company, realizing a profit of some $700,000.

On the sale by Tomas to "S. Wei Lee, Trustee," Deal received a commission of $7,000 for serving as broker. Deal concedes the fee to be small but justified it on the ground that he knew he would also receive another and larger commission on Chen's resale to the Chasewood Company; and, indeed, he received a commission of

---

1. Tomas's alleged partners, appellants in this Court, all reside in Taiwan and all are Tomas's relatives. They are: Tien–Sheng Chien, Yu– Shia Chien, Mie–Chu Chien, Jung–Tsai Chien, and Jung–Fu Chien.

$66,581 for serving as broker in that transaction.

On learning of the foregoing events, Tomas filed the present lawsuit against Chen and Deal seeking various forms of relief. Most of the issues on appeal require a consideration of the successive pleadings filed in the cause by Tomas and his partners. We shall therefore summarize the pleadings, noting here that the causes of action alleged against Chen and Deal remain basically the same throughout the series of amendments mentioned below.

Tomas initiated the lawsuit by an original petition filed September 17, 1985. The filing tolled the limitations period applicable to the four causes of action set up in the original petition against Chen and Deal: (1) for breach of contract; (2) for common-law fraud; (3) for statutory fraud involving a real-estate transaction, as authorized by Tex.Bus. & Com.Code Ann. § 27.01 (1987); and (4) for deceptive trade practice, as authorized consumers under the provisions of § 17.50 of the same code.[2] In the original petition, Tomas designated himself as the sole plaintiff and nothing therein implies that he sued for another.

On July 31, 1986, a date more than two years after accrual of the various causes of action, Tomas filed a first amended original petition. In it, he alleged that he sued for himself and the five individuals named in footnote one, stating that they constituted a partnership and that they had authorized him to purchase the property and "handle" all partnership business connected therewith, which he had done. Tomas prayed recovery for himself and for his alleged partners as their "attorney in fact." These particular allegations were repeated in a second and a third amended original petition, where Tomas prayed recovery for himself and in a "representative capacity" for the alleged partnership and his alleged partners.

In Tomas's fourth and fifth amended original petitions, however, the five alleged partners and the partnership itself appear explicitly as plaintiffs in their own right. These petitions are signed by Tomas's attorney of record, who purported to act as such for the additional plaintiffs named therein. We must take as true the allegations respecting the partnership relation.[3]

**2.** Far from being "in plain and concise language," as required by Tex.R.Civ.P.Ann. 45(b) (Supp.1988), the pleadings in the case are inordinately extended, repetitious, and complicated. This has not assisted our adjudication of the appeal, and we have summarized them in the text as best we can.

We should note that Tomas also alleged that Deal and Chen were jointly and severally liable to him, on each of the causes of action, because their wrongs were committed pursuant to a *conspiracy* between them. *See Berry v. Golden Light Coffee Co.,* 160 Tex. 128, 327 S.W.2d 436 (1959) (tort liability imputed to holder of motor-carrier certificate by reason of its agreement with tortfeasor to evade motor-carrier laws); *Snodgrass v. American Surety Co. of New York,* 156 S.W.2d 1004 (Tex.Civ.App.1941, no writ) (agreement to induce breach of contract); *Hoad v. Aritex Oil Co.,* 243 S.W. 490 (Tex.Civ.App. 1922, writ dism'd) (agreement to convert plaintiff's property); *Oliver v. Huckins,* 244 S.W. 625 (Tex.Civ.App.1922, writ dism'd) (agreement to cheat and defraud plaintiff by inducing his purchase of oil lease). The conspiracy allegation did not imply an independent cause of action, of course, but only presupposed Tomas's establishing one of the actionable wrongs listed above, with the additional evidence necessary to establish that they were committed in a conspiracy

so as to impose vicarious liability against one who would not otherwise be liable.

The parties also joined issue on Tomas's allegation that Chen and Deal breached in various ways the duties required under a "fiduciary relationship" that existed between them and Tomas. In the trial court and in this court, the parties treat the matter as an independent cause of action. We do not believe that to be correct. A "fiduciary relationship" merely implies additional duties of a higher and different character than when parties deal at arms length. While the allegations about "fiduciary relationship" might possibly refer to Tomas's breach-of-contract action, or even to a cause of action for negligence (which is not alleged as such), our interpretation of the whole of his pleadings is that they refer to his allegations setting up a cause of action for fraud. Our discussion in the text follows this interpretation. We should note here, however, that Chen and Deal may be held jointly and severally liable if Tomas establishes that only one breached a fiduciary duty owed to Tomas and that the other knowingly participated therein. *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942).

**3.** The appellate transcript reflects that Chen and Deal have never denied under oath Tomas's allegations of partnership. The trial court was

## THE ORDERS FOR PARTIAL SUMMARY JUDGMENT

In response to several motions urged by Chen and Deal, the trial court rendered a series of orders for partial summary judgment. Collectively, these orders adjudicate the entire controversy. We shall interpret these orders, as best we can, in light of the summary-judgment record as it existed when the orders were rendered.

By order signed May 1, 1986, the trial court adjudged that *Tomas* take nothing against *Chen* on his causes of action for breach of contract and for deceptive-trade practice. The order refers to Tomas's original petition, wherein he is the only named plaintiff. It appears that no appeal is taken from this order.

By order signed October 27, 1986, the trial court adjudged that *Tomas* take nothing against *Chen* "based on a cause of action for breach of fiduciary duty arising out of a common law principal/agent relationship or out of a statutory real estate or broker relationship." The order is ambiguous because (1) it implies that the "breach of fiduciary relationship" is an independent cause of action and (2) it implies that *only* Tomas's claims are adjudicated, even though his partners and the partnership itself had appeared in the cause, as plaintiffs, in Tomas's fourth amended original petition (filed five days previously on October 22, 1986). We shall assume, for the purpose of discussion, that the order of October 27, 1986, adjudicates on the same basis the causes of action alleged by Tomas's partners.

By order signed February 4, 1987, the trial court adjudged that *Tomas and his partners* take nothing against *Deal* "based on any cause of action" that required an agency relationship between any of them and Deal. We so interpret the order because all the partners had appeared in the cause some months earlier and the order itself purports to run against Tomas in his "individual" and "representative" capacities.

By order signed March 23, 1987, the trial court adjudged that *Tomas and his partners* take nothing against *Deal or Chen* on the following grounds urged by Deal and Chen in their separate motions for summary judgment: (a) all causes of action alleged against *Deal and Chen* were barred by the two-year statute of limitations for personal actions, Tex.Civ.Prac. & Rem. Code Ann. § 16.003 (1986); (b) as a matter of law, neither *Chen nor Deal* was an "agent" having fiduciary duties in the transactions upon which the suit was founded; (c) recovery against *Deal* was precluded as a matter of law because the causes of action alleged against him belonged to the partnership entity and not to Tomas or any other partner; and (d) recovery against *Deal* for deceptive-trade practice was precluded, as a matter of law,

therefore obliged to take those allegations as being true. Tex.R.Civ.P.Ann. 93 (Supp.1988). We are similarly obliged.

We note, in addition, that the appellate transcript contains no sworn motion wherein Chen or Deal challenge the authority of Tomas's attorney to act for the partnership and the five alleged partners who are named as plaintiffs in Tomas's fourth and fifth amended original petitions. The motion was required if Chen or Deal wished to challenge the attorney's authority. Tex.R.Civ.P.Ann. 12 (Supp.1988); *see generally* 3 McDonald, Texas Civil Practice § 11.22.1.—D, 175–76 (1983). The partnership entity and the five other alleged partners were of course entitled to appear and prosecute in this manner their alleged causes of action, apart from the anomaly of the partnership entity and the six partners claiming the causes of action concurrently. Consequently, we conclude that Tomas's five partners and the partnership itself *became* parties of record in the filing of the fourth,

succeeded by the fifth, amended original petition; and, indeed, orders rendered by the trial court subsequent to the appearance of the other five partners purport to *adjudicate* their interests as if they *were* parties of record.

Whether the five other partners were parties of record, and when they became such, bears primarily on the issues of whether their causes of action were barred by the statute of limitations and whether Tomas might bring them. These matters are discussed in the text of the opinion. Tomas, in addition, complains on appeal that the trial court erred by sustaining pleas in abatement, urged by Chen and Deal, based on the non-appearance of the five other partners. Whether the trial court erred in this regard is moot, however, because they *appeared* as parties in Tomas's fourth and fifth amended original petitions, along with the partnership entity, which apparently appeared out of an abundance of caution.

because no plaintiff was a "consumer" of services provided by Deal.

If we understand correctly the appellate record and the briefs of the parties, we are required to determine the validity of the summary-judgment orders of October 27, 1986, February 4, 1987, and March 23, 1987. We believe their validity depends ultimately on one or more of the following questions of law: (a) was Tomas authorized to prosecute causes of action for the benefit of the partners and the partnership? (b) did the filing of Tomas's original petition preserve the causes of action belonging to the partners or the partnership, as against the bar of limitations? (c) did the summary-judgment record establish as a matter of law that recovery could not be had against Chen or Deal for fraud, because neither was an "agent" having "fiduciary duties" in the transactions made the basis of the claim? and (d) did the summary-judgment record establish as a matter of law that no plaintiff was a "consumer" of services provided by Deal? Believing that each question requires an answer favorable to Tomas and his partners, we will reverse each of the three summary-judgment orders.

### WHETHER TOMAS COULD PROSECUTE THE CAUSES OF ACTION ALLEGED

■ Under his amended pleadings, the causes of action alleged by Tomas belonged to the partners as such or to the partnership entity. This did not, in our view, preclude prosecution of the suit by Tomas through his original petition and its subsequent amendments.

Chen and Deal contend the "entity" theory of the partnership relation, expressed or implied in several provisions of the Texas Uniform Partnership Act, Tex.Rev.Civ.Stat. Ann. art. 6132b (1970 & Supp.1988), manifests a legislative intention to supplant en-

tirely the common-law rules pertaining to suits brought to recover on causes of action that are properly the property of the partnership itself and not of any partner, such as Tomas. Consequently, they say, Tomas never had legal authority to prosecute the causes of action he alleged.

The "entity" theory holds, of course, that the partnership itself is a legal personality, quite distinct and independent of the legal personalities of the partners as natural or artificial persons themselves. The theory is opposed to the "aggregate" theory of the common law, which views the individual partners as acting collectively in partnership matters. Lewis, *The Uniform Partnership Act,* 24 Yale L.J. 617, 639 (1915); *see also* Comment, *Alternative Remedies in Minority Partners' Suits on Partnership Causes of Action,* 39 Sw.L.J. 1021, 1027 (1986).[4]

That the trial court sustained the contention urged by Deal and Chen is evident in the court's summary-judgment order of March 23, 1987, holding that Tomas lacked the required authority and that the causes of action were, in consequence, barred by limitations.

Before we may evaluate the effect of the uniform act (art. 6132b), we should set out the various common-law rules that were supplanted thereby, according to the contention urged by Chen and Deal. A rather lengthy discussion is unavoidable owing to the several arguments made by the parties.

"It is a general rule that suits ... can only be maintained by and against persons natural or artificial; that is, individuals or corporations." *Frank v. Tatum,* 87 Tex. 204, 25 S.W. 409 (1894). At common law, a partnership is *not* a "person" or a "corporation" *for the purpose of litigation.* Consequently, it could not maintain a suit *as* a partnership, that is to say, "in its own name." *See generally Speake v. Prewitt,*

---

**4.** The Texas Uniform Partnership Act sets out the following "entity" characteristics: (1) real property may be owned in the partnership name (§§ 8, 10) and a partner's rights in partnership property are subordinate to those of the partnership (§ 25); (2) there is a legal distinction between partnership property and a partner's property interest in the partnership (§§ 36(4), 40(h), (i)); (3) the partnership bears responsibility for the acts of its agents (§§ 9, 11, 12, 13, and 14); and (4) the partnership may continue its existence after the death of a partner (§§ 21, 22, 23, 27, 28–B(1), (2), 31(4), 32, 38(2)(b), 41). *See* Tex.Rev.Civ.Stat.Ann. art. 6132b, § 1, Sources and Comments (1970).

6 Tex. 252 (1851); *Kent v. National Supply Co. of Texas*, 36 S.W.2d 811 (Tex.Civ. App.1931, writ ref'd); *Amarillo Commercial Co. v. Chicago, R.I. & G.R. Co.*, 140 S.W. 377 (Tex.Civ.App.1911, no writ); *Houghton v. Puryear*, 10 Tex.Civ.App. 383, 30 S.W. 583 (1895, no writ). While the law regards the partnership as a "legal entity" for its legitimate business purposes, *for the purpose of litigation* the partnership "is taken notice of [as plaintiff] and reached by legal process [as defendant] only through the legal personality of its members." *Roberson v. McIlhenney, Hutchins & Co.*, 59 Tex. 615, 618 (1883) (quoting "Cooley on Torts, 150"). The common law developed quite specific rules and exceptions in this connection. In the case of the partnership as *plaintiff, see,* e.g., 2 Rowley, *Law of Partnership* § 49.2, 267–79 (1960); Gilmore, *Law of Partnership* §§ 174–178, 530–42 (1911). We shall refer only to those exceptions raised in the present appeal.

The general rule at common law *required* that all partners *join* as parties plaintiff in an action to enforce a partnership claim. Consequently, suits "in the partnership name" were quite meaningless in the absence of any or all partners.

With respect to *tort* actions, the general rule prevailed insofar as the wrongful act caused injury to the firm—that is to say, to the partners jointly in their capacity as partners. All the partners were required to join as plaintiffs in the suit, although any partner might also maintain a separate action for injuries sustained personally by him from the same wrongful act as that which injured the partnership. *Barker v. Abbot*, 2 Tex.Civ.App. 147, 21 S.W. 72 (1893, no writ) (suits for wrongful attachment of partnership property require joinder of both partners as plaintiff, provided, however, where one refused to join as plaintiff the other "should be allowed to use his name to recover the full amount of damage sustained by the firm"); *Houghton v. Puryear*, 30 S.W. at 583 (in action for wrongful levy on and seizure of partnership property, one partner may recover only his personal damages and not entire damages sustained by firm, absent a show-

ing of "special reasons" entitling him to do so); *Newberry v. Campbell*, 142 S.W.2d 318 (Tex.Civ.App.1940, no writ) (one partner may not recover personally entire damages sustained by him and his partners by landlord's unlawful ouster, absent allegation and proof as to "special reasons" entitling him to do so).

With respect to actions based on *contracts* made in the name of one partner, on behalf of the partnership entity, all the partners were required to join as plaintiff as required by the general rule, subject to several exceptions. Two such exceptions allegedly apply in the present appeal: (1) where the partner making the contract is the *only* known or "ostensible" partner, the partnership entity occupies the position of an undisclosed principal; therefore, the action might be brought *either* in the name of all the partners *or* in the name of the partner who made the contract in his name alone, *Cleveland v. Heidenheimer*, 92 Tex. 108, 46 S.W. 30 (1898); *Missouri Pac. Ry. Co. v. Smith*, 84 Tex. 348, 19 S.W. 509 (Tex.1892); *Bankers' Trust Co. v. Schulze*, 220 S.W. 570 (Tex.Civ.App.1920), *aff'd*, 236 S.W. 703 (Tex.1922); *Rock Creek Oil Corporation v. Wolfe*, 35 S.W. 1072 (Tex.Civ. App.1930, writ dism'd). (2) "Dormant" or "silent" partners occupy the position of undisclosed principals; consequently they *may* join in the action, but need not do so, *or* the action may be brought by the ostensible partner alone for he is the person with whom the contract was expressly made, *Speake v. Prewitt*, 6 Tex. 252 (1851) (exception recognized but held irrelevant where dormant partners named in plaintiff's petition); *Jackson v. Alexander*, 8 Tex. 109 (1852); *Tynberg v. Cohen*, 67 Tex. 220, 2 S.W. 734 (1887); *Masterson v. F.W. Heitmann & Co.*, 38 Tex.Civ.App. 476, 87 S.W. 227 (1905, writ ref'd); *American Nat. Bank of Wichita Falls v. Haggerton*, 250 S.W. 279 (Tex.Civ.App.1923, no writ); *Miller v. White*, 112 S.W.2d 487 (Tex.Civ.App. 1938, writ dism'd). *See generally* Rowley, *supra*, at 271–72, 274–75; Gilmore, *supra*, at 536–40.

The foregoing common-law rules were affected slightly in 1939 with the promul-

gation of the Texas Rules of Civil Procedure by the Supreme Court, exercising a power delegated to the Court by the Legislature. Tex. Gov't Code Ann. § 22.004 (1988). We refer to Tex.R.Civ.P.Ann. 28 (1979). That rule permits partnerships to maintain a suit in the "partnership name" for the purpose of enforcing a substantive right, provided the "true parties" might be substituted for the "partnership name" on motion by the court or a party. The purpose of Rule 28 was to procure procedural efficiency without affecting adversely any substantive right. Tex.R.Civ.P.Ann. 815 (1967); *Dillard v. Smith*, 146 Tex. 227, 205 S.W.2d 366 (1947); Gilmore, *supra*, § 195, at 566–67.

Nevertheless, the common-law rules did not allow for suits in the "partnership name" without appearance by *any* partner, and Rule 28 unquestionably superseded that aspect of the common law. But the rule is *permissive* merely. For that reason, and because it expressly permits substitution of the "true parties" in interest, Rule 28 necessarily presumes a *continuation* of the common-law rules we have discussed above, as opposed to their absolute and total abrogation or alteration. Other jurisdictions have made similar permissive allowances, by way of statute, for the same purpose and with the same provision for substitution of the real parties in interest. These, it is said, recognize partnerships "as persons" but only "in a qualified sense." *Glasscock v. Price*, 92 Tex. 271, 47 S.W. 965, 966 (Tex.1898).

■ We hold that Rule 28 did not abolish or alter the common-law rules to the extent of precluding suits by partners themselves if they did not wish to prosecute the suit in the "partnership name." We turn then to the more interesting question of whether article 6132b, the Texas Uniform Partnership Act, had that effect.

It is undeniable that a State's adoption of the uniform act may change or abolish existing common-law rules pertaining to partnerships, if any such rules happen to be contrary to some provision in the uniform act. *See* Rowley, *supra*, §§ 44.0–44.-43, at 1–13. It is equally plain, however, that many provisions of the uniform act are simply promulgations of common-law rules, pertaining to partnerships, that existed before enactment of the uniform act. Most importantly, the uniform act expressly acknowledges that the common-law rules continue in force in "any case not provided for in this Act," as stated in § 5 of the uniform act and repeated verbatim in § 5 of article 6132b. In those cases, "the rules of law and equity, including the law merchant, shall govern...." Tex.Rev.Civ.Stat.Ann art. 6132b, § 5. A comment to § 5 advises that the statute generally "embraces most but not all of the 'entity' theory of partnership" and "[i]n doubtful cases, or cases where [article 6132b] is not specific," the effect of § 5 is to point "toward the 'entity' theory which is customarily associated with the law merchant." *Id.*

■ The contentions urged by Chen and Deal perhaps give rise to a "doubtful" case and one where article 6132b "is not specific." But they contend, at best, for an implication to be drawn from the general *tendency* of article 6132b toward the "entity" theory, there being no *particular language* in the statute from which that implication might be drawn. This is the weakest possible implication and one that is outside the range of implications ordinarily attributed to the uniform act. Generally, the uniform act implies the change of a common-law rule only if: (1) the common-law rule is *unquestionably* superseded by a *clear expression* in the act or in a comment; or, (2) the legislature *probably* intended a change but *failed to express that intention clearly* in the act and it is not found in a comment; or (3) there is *no evidence* that the change was intended but that intention *might* be implied *from language actually used* in the act. Rowley, *supra*, § 44.0, at 1–3. The contentions urged by Chen and Deal—that suits *must* be brought only in the "partnership name" or perhaps that all partners *must* join in the suit, *with no exceptions as allowed by common law*, obviously cannot fall within the scope of (1) or (2). We conclude their contentions also do not fall within (3) because no language *actually used* in article

6132b reasonably implies a legislative intention to impose such requirements.

We reject their contention for the additional reason that nothing in article 6132b implies an intention by the Legislature to supplant Tex.R.Civ.P.Ann. 28, or to convert its plainly *permissive* terms into a *mandatory* requirement that suits *must* be prosecuted in the partnership name, or to render meaningless its provision permitting joinder of the "true parties" on motion of the court or a party. These impermissible consequences necessarily follow from the argument raised by Deal and Chen that only the partnership entity might prosecute the causes of action alleged by Tomas and his partners.

We reject their contention for the final reason that it necessarily presumes that the Legislature acted quite irrationally. For example, it presumes that the Legislature struck down all the correlative common-law rules (which presuppose the working of the general rule with its well-established exceptions) designed for special circumstances that may occur to make it impractical to join all partners as plaintiffs. *See, e.g., Loftus v. Ivy*, 14 Tex.Civ.App. 701, 37 S.W. 766 (1896, no writ) (while all partners should join in suit for fraud, the rule does not apply to require joinder of one who had defrauded his partner in collusion with a third party). Other anomalies

suggest themselves, but we need not belabor the point.

■ Had the Legislature intended such a drastic change, and one having so many variables in its effect on causes of action arising out of the partnership relation, we believe the Legislature would have manifested as much in language reasonably suggesting that intention, while making express provision for the circumstances previously governed by all the correlative common-law rules that would be struck down by the "entity" theory of the partnership relation if that theory be applied in the sense urged by Chen and Deal. The Legislature did not do so. Accordingly, we hold article 6132b does not have the effect for which Deal and Chen contend.[5]

## WHETHER THE CAUSES OF ACTION WERE BARRED BY LIMITATIONS AS A MATTER OF LAW

The appeal raises the question whether the causes of action alleged by Tomas are barred by the two-year statute of limitations when: (1) Tomas filed his original petition within two years of the date the causes of action accrued, without mentioning therein that he sued for another; and (2) he alleged the fact of partnership in a first amended original petition filed after expiration of the two-year period.

---

**5.** Our holding is contrary to that reached by the court in *South Texas Aggregates, Inc. v. Pendell*, 694 S.W.2d 608 (Tex.App.1985, no writ). We should, therefore, speak briefly to that decision. We cannot accept the assumptions, reasons, or conclusions given in the pertinent part of the *Pendell* opinion. First, *Pendell* nakedly but perhaps unconsciously applies the *general* rule (suits to enforce a partnership right must be brought in the name of all the partners) to justify the court's *rejection* of the two *exceptions* that have been an *integral part* of the general rule since the earliest days of Texas jurisprudence, namely: (1) *dormant* partners need not be named in such a suit; and (2) one partner *may* sue in his own name alone to enforce a contract or legal title *held in his own name alone* for the benefit of the partnership. Pendell contended his case fell within each of these exceptions. It was no answer merely to refer him to the general or "prevailing rule" as if that rule refuted his contention. *See Pendell*, 694 S.W.2d at 610. It plainly did not for it unquestionably *assumed* those very exceptions existed.

Second, the *Pendell* opinion refers to the justifications behind the general rule—without it absent partners would not be bound by the judgment and the defendant would be denied an opportunity to bring his counterclaims—when the two exceptions urged by Pendell are *themselves* based on the identical justifications. *See, e.g., Tynberg v. Cohen*, 67 Tex. 220, 2 S.W. 734, 735 (Tex.1887) (dormant partner, not named as plaintiff in suit by her partners, nevertheless bound by judgment therein "as fully as were she a party to the record as plaintiff."); *Masterson v. F.W. Heitmann & Co.*, 38 Tex.Civ.App. 476, 87 S.W. 227 (1905, writ ref'd) (dormant partner need not be made plaintiff and defendant entitled to make counterclaim for value of crop lost through breach of contract sued upon by ostensible partners). Thus, these jurisprudential considerations manifestly did *not* require rejecting the two exceptions urged by Pendell nor did they answer his contention that the exceptions applied in his case.

■ The issue appears to come within the statutory rule that an amended pleading relates back to the filing of the original petition, for limitations purposes, unless "the amendment ... is *wholly* based on a *new, distinct,* or *different transaction or occurrence."* Tex.Civ.Prac. & Rem.Code Ann. § 16.068 (1986) (emphasis added) (formerly Tex.Rev.Civ.Stat.Ann. art. 5539b). It has been said, in an analogous case, that the statute precludes application of the limitations bar when, by amendment, a sole shareholder substitutes himself as plaintiff in lieu of a defunct corporation. *Regal Construction Co. v. Hansel,* 596 S.W.2d 150 (Tex.Civ.App.1980, writ ref'd n.r.e.). Similarly, the original petition filed by a corporation's general manager, to recover on a debt owed the corporation, tolls the running of limitations for the benefit of the corporation that appeared subsequently, by amendment, as the real party in interest. *Marek v. Goldsum,* 243 S.W.2d 461 (Tex. Civ.App.1951, no writ).

Other decisions declare, however, that the statute (§ 16.068 and its predecessor) "does not purport to deal with amendments which add, drop or change parties to a suit," so that the question of new parties being added by amendment should be decided in accordance with common-law rules. *Stokes v. Beaumont, Sour Lake and Western Railway Co.,* 161 Tex. 240, 339 S.W.2d 877 (1960); *see also* J.G. Boyd's Good House. *Shops v. General Sec. Serv.,* 483 S.W.2d 826 (Tex.Civ.App.1972, no writ). The proper resolution of the question is, in our view, the same under either the statute or the common-law rules pertaining to the subject. We shall, in deference to *Stokes,* discuss only the latter.

■ The rule at common law is this: the amended petition relates back to the filing of the original petition, even though new facts are alleged in the subsequent pleading, provided the *cause of action* remains the same as that alleged in the original pleading. The following considerations apply in determining whether the amended pleading sets up a different cause of action:

(1) Would a recovery had upon the original bar a recovery under the amended petition? (2) Would the same evidence support both of the pleadings? (3) Is the measure of damages the same in each case? (4) Are the allegations of each subject to the same defenses?

*Phoenix Lumber Co. v. Houston Water Co.,* 94 Tex. 456, 61 S.W. 707, 709 (1901); *see also Transport Inc. v. Jaeger,* 534 S.W. 2d 389 (Tex.Civ.App.1976, writ ref'd n.r.e.).

A case on all fours with the present case is Garrett v. Muller & Co., 37 Tex. 589 (1872), where the ostensible and managing partner sued in his own name on an open account due the partnership. He subsequently amended the petition to set out the names of the (theretofore) dormant partners and to allege that he had entire control of the firm business. The Supreme Court held the bar of limitations did not arise because the original petition was filed within the limitations period and the amended petition did not set up a new cause of action by reason of the new allegations. To the same effect, *see Roberson v. McIlhenney, Nutchins & Co.,* 59 Tex. 615 (1883); *Jeffress v. Western Union Telegraph Co.,* 187 S.W. 514 (Tex.Civ.App. 1916, writ ref'd); *Quanah, A. & P. Ry. Co. v. Galloway,* 165 S.W. 546 (Tex.Civ.App. 1914, writ dism'd); *Laughlin v. Tips,* 8 Tex.Civ.App. 649, 28 S.W. 551 (1894, no writ).

■ A recovery on Tomas's original petition would have barred a recovery under his amended petition, for the dormant partners would have been bound by the former. *Tynberg v. Cohen,* 2 S.W. 734 (Tex.1887); *Masterson v. F.W. Heitmann & Co.,* 87 S.W. 227 (Tex.Civ.App.1905, writ ref'd). It is obvious to us, from a comparison of Tomas's original petition and his subsequent amended petitions, that the same evidence would support all of the causes of action alleged, the measure of damages would be the same, and the allegations would be subject to the same defenses. We conclude then that the bar of limitations was not established in the present case as a matter of law. We hold accordingly.

## WHETHER THE SUMMARY-JUDGMENT RECORD ESTABLISHES AS A MATTER OF LAW THAT TOMAS AND HIS PARTNERS CANNOT RECOVER ON THEIR CAUSES OF ACTION FOR FRAUD

Tomas and his partners contend the trial court erred in holding as a matter of law that they could not recover on their causes of action for common-law and statutory fraud. The holding is based ultimately on the theory that no "fiduciary relationship" existed between Deal or Chen, on the one hand, and any plaintiff on the other, because there was no "agency" relationship between them as a matter of law. We sustain in this respect the points of error raised by Tomas and his partners.

Evidently, summary judgment was given below on the ground that distinct causes of action were alleged for "fraud" and for breach of a duty arising out a "fiduciary relationship," as if these were independent causes of action. This is incorrect under the pleadings and the remainder of the summary-judgment record. The breach of a "fiduciary" duty may only refer to a cause of action for fraud, under the present record, there being no allegation of negligence to which the breach of a "fiduciary" duty might refer. Owing to the apparent confusion in this regard, we should set out briefly the various distinctions involved.

At *common law*, the word "fraud" refers to an act, omission, or concealment *in breach of a legal duty, trust, or confidence justly imposed*, when the breach causes injury to another or the taking of an undue and unconscientious advantage.[6] *Russell v. Industrial Transp. Co.*, 258 S.W. 462 (Tex.1924); *Kellum v. Smith*, 18 Tex. 835 (1857). Common-law fraud includes both "actual" and "constructive

---

**6.** The "legal duty" may arise from several sources. It may arise because of a statute, as in Tex.Rev.Civ.Stat.Ann. art. 6573a, setting out the various acts and omissions by a real-estate broker which, when applicable, may justify revoking or suspending his license. The duty may arise from contract as well. Finally, the duty may arise from a "trust." This word actually refers to a very precise relationship—one in which a person holds a property interest subject to an equitable obligation to keep or use that interest for the benefit of another. 1 Bogert, *Trusts and Trustees*, § 1, 1–2 (2d ed. 1984); *Restatement 2d*, Trusts § 2 (1959). While the expression "fiduciary relationship" is thus a defining element of the legal concept of a "trust," the same expression has been employed by analogy in *other* relationships that are *not* "trusts" in the strict or technical sense, *i.e.*, partnerships, agency, attorney-client, accountant-client, and others. This simply is a shorthand way of implying that the higher duties demanded of a fiduciary *are* applicable in that particular relationship—a relationship where "the law demands of one party an unusually high standard of ethical or moral conduct with reference to another." 1 Bogert, *supra*, at 3.

The specific kinds of relationship, in which the higher standards do apply, may be determined as a *matter of law or* as a *matter of fact*. As a matter of law, they apply for example in the attorney-client relationship, *Cooper v. Lee*, 75 Tex. 114, 12 S.W. 483 (Tex.1889), between a director and his corporation, *Tenison v. Patton*, 95 Tex. 284, 67 S.W. 92 (1902), between partners, *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786 (1938), between joint tenants having funds on deposit, *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502 (Tex.1980), and between principal and agent, *Scott v. Weaver*, 2 S.W.2d 870 (Tex.Civ.App.1927, writ dism'd).

As a matter of fact, the higher standards may apply if it be established that one has placed special confidence in another where the latter is bound, in equity and good conscience, to act in good faith and with due regard to the interests of the other; or when special confidence is reposed in one who obtains thereby a resulting superiority of position and influence. *See, e.g., Consolidated Gas & Equipment Company of America v. Thompson*, 405 S.W.2d 333 (Tex. 1966); *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962); *Schiller v. Elick*, 240 S.W.2d 997 (1951); *Kinzbach Tool Co., Inc.*, 160 S.W.2d at 512, 150 Tex. 363. The fiduciary relationship may rise merely "from moral, social, domestic or purely personal relationships," *Thigpen*, 363 S.W.2d at 253, but mere antecedent dealings between persons or the mere fact that one subjectively trusts the other do not alone justify reposing confidence in him in the sense demanded by a "fiduciary relationship," something apart from the transaction itself being necessary. *Consolidated Gas & Equipment Co.*, 405 S.W.2d at 336. The length of the relationship is one important factor. *Harris v. Sentry Title Co., Inc.*, 715 F.2d 941 (5th Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984).

Equitable remedies, such as rescission or the imposition of a constructive trust, may be awarded for breach of the higher standards of conduct demanded in the fiduciary relationship. *Consolidated Gas & Equipment Company of America*, 405 S.W.2d at 336; *Thigpen v. Locke*, 363 S.W.2d at 252.

fraud." The former encompasses *intentional* breaches of duty that are designed to injure another or to obtain an undue and unconscientious advantage, *Price v. D'Yarmett*, 27 S.W.2d 616 (Tex.Civ.App.1930, writ ref'd); the latter encompasses those breaches that the law condemns as "fraudulent" merely because they *tend* to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial, *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1965). A false representation of a past or present material fact, when one has a duty to speak the truth, is of course a frequent ground for recovery in fraud when another relies thereon to his detriment, *even in an ordinary arms-length transaction in which no "fiduciary duties" exist* and only the ethics of the marketplace apply. *See, e.g., Jeffcoat v. Phillips*, 534 S.W.2d 168 (Tex.Civ.App. 1976, writ ref'd n.r.e.).

If, however, the relationship between the parties is a "fiduciary relationship," as a matter of fact or of law, the law imputes to the relationship *additional and higher* duties and their breach may constitute a fraud as well. Generally speaking,

these additional duties are described as those of "good faith and candor" by the fiduciary toward his principal, 36A C.J.S. *Fiduciary*, at 381 (1961). This includes the general duty of *full disclosure* respecting matters affecting the principal's interests and a general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal. *All* transactions between the fiduciary and his principal are presumptively fraudulent and void, which is merely to say that the burden lies on the fiduciary to establish the validity of any particular transaction in which he is involved. *Id.* at 389. Particular applications of these general rules, in circumstances analogous to the present case, are set out in the footnote.[7]

In addition to the tort of common-law fraud, based both upon false representations *and* upon breach of the higher and additional duties of a fiduciary, Tomas and his partners alleged the statutory cause of action authorized for fraud when the transaction pertains to real estate or corporate stock. Tex.Bus. & Com.Code Ann. § 27.01(d)(3) (1987). The scope of this

---

7. A real-estate broker, in relation to his client, has many duties of disclosure and disinterested conduct that would not apply to him except that the law characterizes the relationship as a "fiduciary relationship." That is to say, a breach of those duties would not be actionable but for the "fiduciary relationship." (Many of these duties are inferable from the Real Estate License Act, Tex.Rev.Civ.Stat.Ann. art. 6573a (Supp.1988), § 15 of which sets out a lengthy list of acts and omissions that might justify suspension or revocation of a holder's license.) For example, a broker will be denied his commission if he agreed secretly to split his commission with the broker for an adverse party, provided he is indeed an "agent" with fiduciary duties and not merely a "middleman" dealing with all parties at arms length. *Williams v. Knight Realty Co.*, 217 S.W. 755 (Tex.Civ.App.1919, no writ); *Scott v. Kelso*, 62 Tex.Civ.App. 163, 130 S.W. 610 (1910, no writ).

An agent with fiduciary duties may not, without disclosing the fact, sell to a purchaser who is his wife. *Green v. Hugo*, 81 Tex. 452, 17 S.W. 79 (Tex.1891) (corporate director selling to wife under resolution authorizing sale of land owned by corporation). A broker having fiduciary duties must disclose to his principal all facts affecting the principal's interest, including the fact that a producing oil well had been brought in on nearby land, which immediately increased

the market value of the principal's land over and above the specific listed price at which broker negotiated the contract obliging principal to sell. *Brown v. Musgrave*, 222 S.W. 606 (Tex.Civ.App.1920, no writ) (suit by buyer for specific performance where principal defended on ground that broker and buyer conspired to defraud him). A broker must inform his principal that he himself is acquiring an interest in the property sold by the principal, together with all other facts that might affect the principal's judgment, including the broker's anticipated profits. *Riley v. Powell*, 665 S.W.2d 578 (Tex. Civ.App.1984, writ ref'd n.r.e.); *Southern Cross Industries, Inc. v. Martin*, 604 S.W.2d 290 (Tex. Civ.App.1980, writ ref'd n.r.e.); *Anderson v. Griffith*, 501 S.W.2d 695 (Tex.Civ.App.1973, writ ref'd n.r.e.).

These illustrations of the broker's higher duties as a fiduciary are in addition to the ordinary duties of a broker. He may not, for example, induce his principal to purchase by a false statement of a material fact. *H.W. Broaddus Co. v. Binkley*, 126 Tex. 374, 88 S.W.2d 1040 (1936, opinion adopted) (financial ability of tenants or income from property purchased by principal); *Branstetter v. Hook*, 251 S.W. 257 (Tex.Civ.App. 1923, writ dism'd) (financial ability of purchaser).

cause of action is quite narrow, being based solely on false representations that induce another to enter into a contract. *Id.* at § 27.01(a).

With the foregoing distinctions in mind, we turn to the particulars of the summary-judgment record in the present case.

■ We hold the summary-judgment record precluded judgment as a matter of law on the causes of action alleged against Chen and Deal for: (1) ordinary fraud, whether "actual" or "constructive" as defined above, irrespective of whether Chen or Deal was a "fiduciary"; (2) statutory fraud under § 27.01 of the Texas Business and Commerce Code, based upon allegedly false misrepresentations made by Deal and Chen to induce Tomas to enter the contract with Lee, irrespective of whether Chen or Deal was a "fiduciary"; (3) fraud in the breach of one or more fiduciary duties imputable *as a matter of law* to Chen or Deal, or both of them, as "agents" of Tomas; and (4) fraud in the breach of one or more fiduciary duties that might be imputed *as a matter of fact* to Chen or Deal, or both of them, by reason of summary-judgment "evidence" showing that Tomas justifiably reposed in Chen and Deal a special confidence in circumstances where they obtained superiority and influence or where they were, in equity and good conscience, bound to act in good faith and with due regard for Tomas's interests, under the doctrine of *Thigpen* and *Consolidated.*

Concerning the fraud actions alleged against Chen *and* Deal, we observe first that it is undisputed that they obtained the resale profit and commissions mentioned previously and that neither disclosed to Tomas that the sale to Lee was colorable only and that Chen was the actual purchaser.

In particular reference to Chen, we refer to the following summary-judgment "evidence." Tomas gave deposition testimony that Chen induced him to sell the property to Lee by representing that $2.50 per square foot was a good price for the property when she knew that sum was less than market value and, indeed, when she knew of an offer to purchase the property for $4.50 per square foot; by representing

that property values in the vicinity were declining when she knew they were rising; by representing that Lee was the purchaser when she was not; by representing that Lee had made an earnest-money deposit when she had not; and by representing that the Lee offer resulted from a course of negotiations with potential buyers conducted by Chen for Tomas's benefit, when that representation was false. A real-estate broker, Ken Seguin, gave deposition testimony that Chen obtained from him information about offers to purchase the property by representing that she was Tomas's agent in his endeavor to sell the property. Chen's neighbor, Joe Lucas, gave deposition testimony that Chen told him she was handling the sale of the property for Tomas. In affidavits opposing Chen's motion for summary judgment, we find statements by Tomas that Chen assisted and advised him in his purchase of the property—particularly as to its worth; that they discussed investing jointly in area real properties; that he relied on Chen's knowledge of the local real-estate market and depended on no other source of information in deciding to buy and sell the property; that he asked Chen specifically to help him and his family (his partners) sell the property and she represented specifically that she would do so; and in reliance on all the foregoing and upon Chen's promise to negotiate for him with prospective purchasers and their agents, *Tomas determined and disclosed to Chen the minimum price he would accept in selling the property,* implying that he would not have done so had he known she was to be a purchaser herself.

In particular reference to Deal, we refer to the following summary-judgment "evidence." Tomas gave deposition testimony that Deal represented to him that he had advertised the property for sale and in consequence had received offers only in the range of $1.90 to $2.15 per square foot, when in fact these representations were false; that Deal knew of Chen's plan to purchase the property herself for resale to Chasewood, and that Deal intentionally cooperated with her in that regard in order to

obtain an additional and higher commission, after reducing his commission on the sale to Lee; that Deal knew Chen had received an offer of $4.00 per square foot for comparable property and that Tomas's property was worth more than Deal had represented it to be worth; that Deal had represented that he would sell the property in a tax-free exchange, when he intended instead to cooperate in Chen's purchase of the property for immediate resale; and that Tomas had agreed to sell his property only through Deal, to which Deal replied that he would do his best in Tomas's behalf, which was false. To affidavits opposing Deal's motion for summary judgment, we find attached certain documents: (1) offers to purchase the property, drafted by Deal and listing himself as "agent" for the "seller" (Tomas) and stating that he was entitled to a commission, as such, on sale of the property; and (2) a letter from Deal to Tomas reciting that Deal had advertised the property for sale, that he had solicited offers of prospective purchasers, and that he had discussed these offers with Chen.

Whether fiduciary duties were imputable to Chen or Deal as a matter of law, by reason of an agency relationship, or as a matter of fact under the doctrine of *Thigpen* and *Consolidated*, either would be jointly and severally liable as a fiduciary if he knowingly cooperated in the other's breach of fiduciary duty. *Kinzbach Tool Co., Inc.*, 160 S.W.2d at 514.

■ Concerning the matter of agency, which requires, of course, an agreement by principal and agent establishing that legal relationship, we should observe that the agreement is not itself a fact but an inference drawn from facts; and, the agency relationship may be inferred from the conduct of the parties and any other relevant facts and circumstances surrounding the transaction. *Wilson v. Donze*, 692 S.W.2d 734 (Tex.App.1985, no writ); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex.App. 1984, writ ref'd n.r.e.); *cf. Carr v. Hunt*, 651 S.W.2d 875, 879 (Tex.Civ.App.1983, writ ref'd n.r.e.).

Finally, we should say that we deem it unnecessary to discuss the relevant issues

in the context of Chen's or Deal's relationship with Tomas's presumed partners or with the partnership entity. Perhaps neither Chen nor Deal knew of the existence of the partnership, but if they owed duties to Tomas as the seller and sole record owner of the property, it is immaterial to them that Tomas held the property for the benefit of the partnership with his own obligations as agent for his partners. *See* Tex.Rev.Civ.Stat.Ann. art. 6132b § 9 (1970). And if Chen or Deal breached a duty owed to Tomas, whether a fiduciary duty or some lesser duty, there is only one cause of action for that breach, to be prosecuted under the rules of law discussed in this opinion heretofore.

We hold the trial court erred in holding as a matter of law that Tomas and his partners could not recover on the causes of action they had alleged for fraud.

## STATUTORY CAUSES OF ACTION FOR DECEPTIVE TRADE PRACTICES

■ The trial court adjudged that Tomas and his partners take nothing on their statutory causes of action based upon the provisions of Tex.Bus. & Com.Code Ann. § 17.50 (1987). One such summary-judgment order adjudicated Tomas's claim against Chen, and no appeal was taken therefrom. Accordingly, we do not disturb that order by our judgment and leave its effect to be determined subsequently by the trial court, should an issue arise in that regard. The summary-judgment order that adjudicated Tomas's claim against Deal, for deceptive trade practice, rests on a theory that Tomas could not be a "consumer" of Deal's services because the record established, as a matter of law, that no "agency" relationship existed between them. We disagree, of course, with this theory, believing that the summary-judgment record contained ample "evidence" from which such an agency might reasonably be inferred. We have pointed out this "evidence" above and need not repeat it here. Accordingly, we reverse the summary-judgment order adjudicating in favor of Deal the actions for deceptive trade practice.

For the reasons given above, we reverse the summary-judgment orders signed October 27, 1986, February 4, 1987, and March 23, 1987, leaving undisturbed that of May 1, 1986, and order that the cause be remanded to the trial court.

CARROLL, J., not participating.