**Dennis BUFFINGTON, Appellant,**

v.

**Maria C. DeLEON, Appellee.**

**No. 01–03–00756–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 10, 2005.

---

Eric L. Fredrickson, Tomball, TX, for Appellant.

Joe F Wheat, Law Office of Joe F. Wheat, Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

After a bench trial, the trial court granted the permanent injunction that Maria C. De Leon, appellee, sought and declared that Brace Road, a dirt road, was a public road. In four points of error, Dennis Buffington, appellant, argues that the trial court erred because (1) the evidence does not support the trial court's finding that Brace Road is a public road, (2) DeLeon waived her right and is estopped from using Brace Road, (3) the judgment is so vague as to the location and width of Brace Road as to be unenforceable, and (4) the evidence does not support the award of

$1100. We reform the judgment and, as reformed, affirm.

## Background

The property in question is located in an unrecorded subdivision known as Braceland Manor Subdivision that was developed as a mobile home subdivision. The developer, Deryl Watson, laid out the lots of Braceland Manor pursuant to a plat prepared by a surveyor, Robert La-Plant, in March 1982. The plat showed Lots 1 through 7 of Braceland Manor lying north of Brace Road and Lots 8 though 14 lying south of Brace Road. The plat also showed lots laid out for Hilltop Acres Subdivision adjoining Braceland Manor to the west. One month later, the Warrens, who owned the land dedicated to Braceland Manor Subdivision, and Watson signed the "Restrictions for Braceland Manor Subdivision, Section I" (the "Restrictive Agreement") which contained an express dedication to the public of "all road and streets that presently exist or as may hereafter be constructed" in Braceland Manor. Watson purchased the land from the Warrens, and, thereafter, Brace Road, the only road in Braceland Manor, was constructed with a 60 foot right-of-way. James McGee, the developer for the neighboring Hilltop Acres Subdivision, testified that he constructed the road and ditches along Brace Road and that the residents of Hilltop Acres use Brace Road for access to their property.

The Warrens foreclosed on their deed of trust after Watson defaulted on his payments in 1986. In 1987, the Warrens deeded the southern portion of Braceland Manor to McGee (Lots 8 and 9), Joseph and Danita Georgal (Lots 10, 11, and 12), and Pat Altenburger (Lots 13 and 14). Buffington acquired Lots 13 and 14 from Altenburger in 1999. At the time of the original conveyance to the southern land-

owners, the Warrens executed a Private Roadway Easement granting a right of access over Brace Road to the owners of the property lying south of Brace Road and reserving the right to use of the road to the Warrens, who still owned Lots 1 through 7 north of Brace Road. The Warrens retained title to the northern lots until 2001, when DeLeon purchased all seven northern lots.

DeLeon testified that, when she signed the earnest money contract for the property, she was on notice that Brace Road was a private road, but understood that she could use it with the permission of the southern landowners. She also testified that she sought Georgal's permission, and he even described the type of culverts she would need to install to access the roadway. Later the same day, all but one of the southern landowners denied DeLeon access to the roadway. DeLeon subsequently discovered in the Restrictive Agreement that Brace Road had been dedicated to the public, and she hired someone to install six culverts along the northern part of Brace Road to provide access to her property. DeLeon testified that, in July 2002, while the culverts were being installed, Buffington sent a sheriff to tell DeLeon that he was going "to take [her] to jail because [she] was trespassing." She did not go to jail, but, one week later, the culverts were removed and placed on her property. Georgal testified that he removed DeLeon's culverts because they "ruined the integrity of the ditch" and caused flooding.[1]

On December 19, 2002, the trial court awarded DeLeon a temporary restraining order, and, in February 2003, a temporary injunction was entered, and the case was set for trial. After a two-day bench trial, the trial court granted DeLeon's permanent injunction and issued the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff, Maria C. De Leon[,] is the owner of a 10.100 acre tract of land situated in Harris County, Texas as described in the deed admitted into evidence as Plaintiff's Exhibit 12 A ("Plaintiff's Property").

2. Plaintiff's Property is situated within the boundaries of Braceland Manor Subdivision, Section 1, an unrecorded subdivision in Harris County, Texas shown on Plat admitted into evidence as Plaintiff's Exhibit 1 A. (The "Plat")

3. The south line of Plaintiff's Property abuts the north right of way line of a 60 foot road right of way known as Brace Road (hereinafter called "Brace Road") shown on the Plat.

4. Brace Road was expressly dedicated to the public by reason of restriction introduced into evidence as Plaintiff's Exhibit 4 A.

5. Brace Road was laid out and constructed as a 60 foot road right of way in 1982 with drainage ditches on both sides of the road surface within such sixty (60) foot right-of-way.

6. Brace Road was used by the public from approximately 1982 until the present time.

7. Plaintiff, De Leon, installed culverts and a driveway in the drainage ditch along the north boundary of Brace Road for access to Plaintiff's Property in July, 2002.

---

1. Georgal testified that DeLeon planned to raise chickens on her property. She built a 6000 square foot coop, and he was concerned that waste from the chickens would contaminate the property.

8. Plaintiff's culverts and driveway were improperly removed by Defendants without her consent in July, 2002.

9. Plaintiff suffered damages as a result of the removal of the culvert by the Defendants in the sum of $1,100.00.

10. Defendants have constructed permanent railroad ties that obstruct Plaintiff's access to the sixty (60) foot right-of-way of Brace Road.

11. The railroad ties obstruct the use of Brace Road by the Plaintiff.

## CONCLUSIONS OF LAW

1. Brace Road is declared to be a public road.

2. Plaintiff, Maria C. De Leon[,] is entitled to a permanent injunction commanding the Defendants to desist and refrain from damaging and working on Brace Road in such a manner so as to damage such roadway or impede Plaintiff's access to Brace Road and from obstructing or impeding in any way whatsoever Plaintiff's use of Brace Road and from impeding or disturbing Plaintiff's access from Brace Road to Plaintiff's Property.

3. Plaintiff is entitled to a mandatory injunction commanding the Defendants to remove that portion of the railroad ties currently existing above the surface of Brace Road so that such railroad ties do not obstruct ingress and egress by the Plaintiff to Plaintiff's Property.

4. Plaintiff, Maria De Leon, shall have and recover from Defendants, jointly and severally, the sum of $1,100.00 as actual damages.

5. Brace Road is a public road, 60 feet in width, abutting the south boundary line of Plaintiff's Property.

6. Plaintiff, Maria C. De Leon[,] shall recover from the Defendants, jointly and severally, all costs expended in this matter.

The defendants in the underlying case consisted of the owners of six of the seven lots south of Brace Road. Buffington is the only defendant who appeals the trial court's judgment.

### Permanent Injunction

The decision to grant or deny a permanent injunction is ordinarily within the sound discretion of the trial court if a bench trial has been conducted, and appellate review of the trial court's action is limited to the question of whether such action constituted a clear abuse of discretion. *Crain v. Unauthorized Practice of Law Comm. of the Supreme Court of Tex.*, 11 S.W.3d 328, 332 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

### Public Road

In point of error one, Buffington argues that the evidence is legally and factually insufficient to support the trial court's finding that Brace Road is a public road.

Our review of a legal sufficiency point requires us to consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex.App.-Houston [1st Dist.] 1993, writ denied). If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue. *Id.* In

our review of the factual sufficiency of the evidence, we must consider and weigh all of the evidence, and we will set aside a finding only if the evidence standing alone is too weak to support the finding, or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Vannerson*, 857 S.W.2d at 666.

■■■ The Texas Supreme Court set out the basic principles for determining when a road becomes a public road.

> All roads which have been laid out and established by authority of the commissioners' courts are public roads. A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with the assent of the owner or by prescription. A road may also become public, in the sense that the public have the right to use it, by dedication.

*Worthington v. Wade*, 82 Tex. 26, 17 S.W. 520, 520–21 (1891) (internal citations omitted). "Dedication" of a private roadway is the setting aside of such roadway for the public use for a passageway. *Viscardi v. Pajestka*, 576 S.W.2d 16, 18 (Tex.1978). Once dedicated, the owner of the land reserves no right to uses that are incompatible with the full enjoyment of the public. *Miller v. Elliott*, 94 S.W.3d 38, 45 (Tex. App.-Tyler 2002, pet. denied); *Scott v. Cannon*, 959 S.W.2d 712, 718 (Tex.App.-Austin 1998, writ denied). Texas courts have recognized the doctrine that dedication of land to public use need not be shown by deed or by public use of any particular length of time:

> It is sufficient if the record shows unequivocal acts or declarations of the landowner, dedicating same to public use, and where others act on the faith of such dedication, the landowner will be estopped to deny the dedication, or to make any future use of the property inconsistent with any purpose for which the land was dedicated.... [I]t is necessary that there should be an appropriation of land by the owner to public use, in the one case by some express manifestation of his purpose to devote the land to the public use, in the other by some act or course of conduct from which the law will imply such an event.

*Owens v. Hockett*, 151 Tex. 503, 251 S.W.2d 957, 958 (1952).

■■ Here, considering only the evidence and inferences that tend to support the finding, we hold that the trial court did not abuse its discretion in finding that the evidence was legally sufficient to conclude that Brace Road was public. On April 7, 1982, Watson and the Warrens executed a document entitled "Restrictions for Braceland Manor Subdivision, Section I." This document was created for the purpose of establishing "conditions, restrictions and easements as covenants running with the land binding upon the owner and upon future purchasers, or owners, their heirs and assigns, and all parties or persons holding possession under such purchaser or future owners in Braceland Manor Subdivision, Section I." Paragraph 21 of this document declared

> There is hereby expressly reserved, retained, granted and dedicated unto the *public*, a right-of-way and easement for purpose of ingress and egress to this and any other tracts of land, *forever*, on, over and across all roads and streets that presently exist or as may hereafter be constructed.

(Emphasis added.)[2] In 1982, Brace Road was declared public. Accordingly, the evi-

---

2. Buffington seems to argue that, because

Watson ultimately defaulted on his loan for

dence was legally sufficient to support the verdict.

■ Furthermore, considering and weighing all of the evidence, we hold that the trial court did not abuse its discretion in finding that the evidence was factually sufficient to support a finding that Brace Road was public. In opposition to the permanent injunction, Buffington argued that, because the county did not maintain Brace Road, it could not be a public road. It is undisputed that the county does not maintain Brace Road. Glenda Bucceri, road log coordinator for the Harris County Public Infrastructure Department, testified that none of the roads in Braceland Manor or Hilltop Acres are on the road log; therefore, the county has not accepted the roads for maintenance.[3] Bucceri further testified that the county has never expressly or formally accepted Brace Road as a dedicated public roadway. If the county "accepts" a roadway, it must maintain it. Bucceri explained that, even if a roadway is dedicated to the public, if it is not built in accordance with county specifications, the county will not accept it for maintenance.

James McGee, the sole southern landowner who gave DeLeon permission to use Brace Road, testified that he developed Hilltop Acres and provided the funding for Watson to develop Braceland Manor. McGee explained that the landowners were responsible for maintaining Brace Road. He testified that the landowners considered trying to improve the road to meet county specifications, but the landowners decided that they did not have enough money to complete the project. McGee testified that he built Brace Road to provide ingress and egress to Hilltop Acres that, otherwise, would be landlocked.[4] McGee testified that "Everybody. I mean everybody—delivery people, dump trucks by the dozens" used Brace Road after McGee constructed it in 1983. The owners in Hilltop Acres used the road because "that was the only way [of] ingress into their properties." McGee testified that people were using Brace Road "all the way through for 20 years, no stop." When asked how Brace Road was dedicated to the public, McGee responded, "That was all agreed with the Warrens before I signed any contract to buy any land." The defendants' attorney repeatedly reminded McGee that he was not a party to the original deed. McGee insisted that he was instrumentally involved in the development of Braceland Manor, despite the fact that his name does not appear on any deed.[5]

Buffington further alleged that Brace Road's earlier declaration as public had been overridden by a subsequent easement executed in 1987. In 1982, the Warrens dedicated the road to the public when they sold the property to Watson. In 1986, Watson defaulted on his payments, and the Warrens foreclosed on the property. On January 26, 1987, the Warrens executed a Private Roadway Easement granting a

Braceland Manor and the property was foreclosured upon, the document outlining the restrictions for Braceland Manor has no weight. Buffington cites no authority for this proposition.

3. DeLeon's attorney stipulated that Harris County does not maintain Brace Road.

4. McGee acknowledged that there is a road on the southern portion of the Hilltop Acres land, but, to access it, one must drive over a narrow bridge that will not support larger vehicles.

5. During McGee's testimony and after repeated instructions that he answer only the questions asked, the trial court instructed "the court reporter not to take down any statements from this witness that are not in response to specific questions. He is volunteering. We don't need it in the record."

right of access over Brace Road to the owners of the property lying south of Brace Road and reserving the right to use of the road to the Warrens. Buffington argues that the 1987 easement replaced the earlier public dedication because Watson defaulted on the property. However, the Warrens reserved no right to dedicate the land to uses that were incompatible with the full enjoyment of the public. *See Miller,* 94 S.W.3d at 45; *Scott,* 959 S.W.2d at 718.

We hold that the trial court did not abuse its discretion in finding that the evidence was legally and factually sufficient to support the dedication of Brace Road as a public road.

We overrule point of error one.

**Waiver**

■ In point of error two, Buffington argues that De Leon waived her right to use Brace Road and is estopped from using the road.

■ Waiver is an affirmative defense and is proven by showing a party's "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley,* 111 S.W.3d 153, 156 (Tex.2003); *Robinson v. Robinson,* 961 S.W.2d 292, 299 (Tex.App.-Houston [1st Dist.] 1997, no writ). It is the movant's burden to show waiver. *See El Paso Prod. Co. v. Valence Operating Co.,* 112 S.W.3d 616, 623 (Tex. App.-Houston [1st Dist.] 2003, pet. denied). In determining if a waiver has in fact occurred, a court must examine the acts, words, or conduct of the parties, and it must be "unequivocally manifested" that it is the intent of the party to no longer assert its right. *Robinson,* 961 S.W.2d at 299.

Buffington contends that DeLeon waived her complaint when she entered into the earnest money contract with the Warrens in April 2001. Under the "Special Provisions" paragraph on the earnest money contract, the following statement was handwritten onto the contract:

> Buyer is purchasing property as is and understands that the road along the south property line is a private road owned by other land owners. Access to the property will have to be obtained by buyer from the owners of the private road or from the county off the county road which is adjacent to the east property line.

DeLeon conceded that, when she signed the earnest money contract, she was on notice that she must get permission to use Brace Road. She testified that she spoke with the southern lots' landowners, and that all but one refused to give her permission to use the road. However, DeLeon testified that, at the time she signed the earnest money contract, she was unaware of the existence of the earlier dedication of the roadway to the public. As such, she did not intentionally relinquish a *known* right.

We overrule point of error two.

**Vague**

■ In point of error three, Buffington contends that the judgment enjoining Buffington from obstructing Brace Road is so vague as to the location and width of the road as to be unenforceable.

The pertinent part of the judgment states that

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Brace Road is hereby declared to be a public road and shall continue to be a public road for the benefit of the public and that Brace Road is a 60 foot right-of-way existing along the north sixty feet (60') of the Property owned by Defendants herein in Braceland Manor subdivision,

and which sixty (60') foot road abuts the South boundary of Plaintiff's Property.

For clarification purposes, we reform the judgment to incorporate the language found in the private roadway easement created on January 26, 1987. The judgment will be reformed to state as follows:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Brace Road is hereby declared to be a public road and shall continue to be a public road for the benefit of the public and that Brace Road has as its north boundary line the north boundary line of the Property, said right -of-way and easement being an area thirty (30') feet on either side of a centerline described as follows: Beginning at the most southeasterly point of the herein described Property: THENCE N 00 03' 33" W a distance of 50.43 feet to the beginning point of the herein described centerline; THENCE N 35 26' 37" W a distance of 272.99 feet to a point; THENCE N 89 57' 37" W a distance of 13333.23 feet to a point on the west boundary line of the Property, provided, however, that, at the beginning point of said centerline, where the same intersects the west right-of-way line of Bauer Road, said easement shall extend and cover an area 50.43 feet on either side of said centerline.

We reform the judgment accordingly, and, as reformed, overrule point of error three.

### Damages

█ In point of error four, Buffington argues that the evidence does not support the award of $1,100 in damages.

The uncontroverted testimony established that DeLeon paid $500 to have six culverts installed. She testified that she paid $100 each for the culverts. Georgal acknowledged that he removed the culverts without DeLeon's permission, and DeLeon testified that the culverts were damaged when Georgal removed them. Buffington argues that DeLeon should re-use the culverts Georgal removed based on DeLeon's testimony that they were not all damaged. However, the trial court was entitled to resolve any conflicts in DeLeon's testimony. *See Lyles*, 825 S.W.2d at 493. Furthermore, DeLeon testified that Georgal dug the ditches deeper, making it more difficult for her to drive on Brace Road. She testified that, on one occasion, she got stuck in the mud trying to enter her property from Brace Road through the ditches Georgal had created. DeLeon testified that she ultimately had to have the transmission replaced in her car due to the incident.

We hold that the evidence is legally and factually sufficient to support the award of $1,100 in actual damages.

We overrule point of error four.

### Conclusion

We reform the judgment to reflect the metes and bounds description of the property, and, as reformed, affirm the trial court's judgment.