# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00625-CV

**Appellants, Toni Diane Compton and Johnny Compton//Cross-Appellant, Mary Sesso**

**v.**

**Appellee, Mary Sesso//Cross-Appellees, Toni Diane Compton and Johnny Compton**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-03-0782-C, HONORABLE RAE LEIFESTE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal concerns whether Toni Diane Compton committed a breach of fiduciary duty and fraud against her mother, Mary Sesso, and whether Toni Compton's husband, Johnny Compton, acted in a way that renders him liable for any or all of the alleged fraud. Mary Sesso sued the Comptons,[1] and after a nonjury trial, the court determined that (1) Toni Compton committed fraud and constructive fraud against Mary Sesso and (2) Johnny Compton knew or should have known of the fraud and he accepted some of the benefits from it. Accordingly, the court awarded Mary Sesso $72,448.24 in actual damages against Toni Compton and held Johnny Compton jointly and severally liable for $26,244.60 of that amount. The court also assessed $15,000 in exemplary

---

[1] The term "the Comptons" refers to Toni Compton and Johnny Compton but does not include Toni Compton's son, Lynn.

damages against Toni Compton. On appeal, the Comptons challenge the sufficiency of the evidence to support the judgment. By cross-appeal, Mary Sesso contends that the court erred by limiting Johnny Compton's liability. She requests that we reform the judgment to hold him jointly and severally liable for the entire judgment. We will affirm the judgment.

**BACKGROUND**

Toni Compton's parents, Mary and Tony Sesso,[2] lived in a house they owned in Del Rio. The Sessos had a strained relationship with their daughter, Toni Compton. Mary Sesso testified that she and her husband changed their will, directing that their estate be divided equally among their three children, but that Toni Compton's share would pass to their grandson, Lynn Compton.

Mary Sesso testified that, in 2002, Toni Compton persuaded her parents to sell the house and move to an apartment in San Angelo so that she could care for them. In early September 2002, the Sessos received a check for $76,127.22 from the sale of the house. Toni Compton drove her parents to Del Rio to complete the transfer of keys and to cash the check. The Sessos used $2,577.97 of the funds for a cashier's check to pay a debt to a furniture store and took the remainder in cash in two bank pouches. A letter prepared in 2003 by the Del Rio bank recites that the Sessos received $73,549.25—$53,500 in $100 bills, $20,000 in $50 bills, two $20 bills, one $5 bill, four $1 bills, and a quarter.

On September 11, 2002, the Sessos and Toni Compton opened a safe deposit box at the San Angelo bank where Toni and Johnny Compton had their accounts.[3] Mary Sesso testified that

---

[2] Toni Compton's father, Tony Sesso, is now deceased.

[3] Mary Sesso testified that they cashed the check and rented the safe deposit box on the same day. When the defense pointed out that the respective bank documents indicated the events occurred

2

she and her husband let Toni Compton sign the box agreement because Toni Compton wanted access to the box in case of an emergency. Mary Sesso testified that they put all of the cash they received from the Del Rio bank into the safe deposit box. Mary Sesso testified that her husband wanted to keep the money at home. The Sessos had a fixed income of just over $1100 per month and intended to use the cash only for extraordinary or emergency expenditures.

Mary Sesso testified that she kept both of the keys to the safe deposit box in their original envelopes hidden in her jewelry box in her husband's drawer. She told Toni Compton where the keys were in case of emergency. Mary Sesso testified that Toni Compton delivered groceries to their apartment every Friday and went unsupervised into various areas of the apartment. Mary Sesso testified that she did not authorize anyone to open the safe deposit box and did not know that anyone had opened it. She testified that she knew that her husband did not authorize anyone to take funds from the box because he would have told her if he had.

Mary Sesso testified that she did not attempt to open the box until she needed funds to pay for her husband's funeral in June 2003. At that time, she looked for the keys to the box but found only the empty envelopes in her jewelry box. Toni Compton claimed ignorance when asked where the keys were. Mary Sesso testified that, after she explained that she needed to go to the bank in the morning to get the money, Toni Compton told her "you better be early."

Toni's son, Lynn Compton, accompanied Mary Sesso to the bank the next morning. After the box was drilled open by a locksmith, they discovered that most of the cash was missing.

---

on consecutive days, Mary Sesso said she believed the dates shown on the documents were erroneous. She said that, in any event, if a night passed between cashing the check in Del Rio and placing the money in the rented box in San Angelo, Toni Compton had possession of the cash during that time.

One of the bank pouches contained only a penny. The other contained about $1100 in bundles. Each of the bundles had $100 bills on the outside but were filled with $1 bills. According to photographs taken several days later of the labels binding the bundles, the bundles each contained a hundred single bills. One of the bundles of bills was stamped as being from the San Angelo bank on October[4] 15, 2002.

San Angelo bank employee Rebecca George supervised several events involving the safe deposit box. She had rented the box to the Sessos and Toni Compton in September 2002. She had assisted[5] Toni Compton in opening the box on October 15, 2002. George also viewed the contents of the box on June 13, 2003, at Lynn Compton's insistence about two minutes after the box was opened. George testified that Mary Sesso and Lynn Compton were very upset after viewing the contents of the box and ended the rental within minutes. Bank records showed that Toni Compton had also opened the box on November 13, 2002 and April 15, 2003. There is no record of anyone else opening the box at any other time.

Lynn Compton testified that, after learning his mother had previously opened the box, he called to speak to her. He testified that Johnny Compton, his stepfather, told him that Toni Compton was busy, but that he heard his mother screaming, "Whatever he's saying, he's lying." Lynn Compton testified that the Comptons had made several purchases after September 2002, including a new wooden floor, new furniture, a cement mixer, a barn, a stove, a water purification

---

[4] Sesso testified that the bundle was stamped "October," yet she no longer had the wrappers by the time of trial. The part of the stamp showing the month is not visible in the photographs of the bundles, although the day, year, and the San Angelo bank's name were visible.

[5] George testified that the safe deposit boxes open with the use of two keys—a "guard key" used by a bank employee and the customer's key.

system, a redwood deck, and a Suburban with leather interior. He testified that Johnny Compton said that the Suburban payments were $480 per month. Lynn Compton described his relationship with his grandparents as very good, saying that he visited them often. He testified that he may have been at their apartment in September 2002 when they returned from Del Rio with the cash. He also testified that, since September 2002, he had bought both a new home (with no downpayment because of his disabled veteran status) and a new car, both with financing.

Toni Compton said that her relationship with her father was very good but that her relationship with her mother was only fair. Toni Compton testified that her parents were looking to move from Del Rio in part because of a disagreement with their daughter-in-law, who also lived in Del Rio. Toni Compton said that her parents liked the apartment that Johnny Compton's mother had in San Angelo and investigated various retirement communities in that city.

Toni Compton testified that, although her parents were encouraged to invest the proceeds of the house sale, her mother insisted on keeping the funds in cash. She testified that her mother held the cash overnight before they opened the safe deposit box. Toni Compton testified that she could not be sure how much money was actually placed in the box. Because Mary Sesso requested that something other than cash be put in the box, Toni added two strands of pearls. She testified that Mary Sesso gave her one of the safe deposit keys in September 2002 when they rented the box.

Toni Compton explained that, in accord with her father's wish, she took $30,000 in cash from the box on October 15, 2002, to purchase the Suburban. She said that she discussed the purchase with her father in front of her son, but not her mother. Toni Compton testified that her

5

father said he wanted to make sure that she got something from him in case Mary Sesso changed their will again. Toni Compton testified that her father knew the price range of the vehicle and knew she took the cash. While taking the $30,000 from the box, she also removed her pearls. Evidence showed that, in mid-October 2002, Toni Compton deposited $26,000 into her and Johnny Compton's checking account and wrote a $26,244.60 check for the Suburban.

Toni Compton testified that her remaining visits to the safe deposit box involved only the pearls. She replaced them in November 2002 and removed them in April 2003. She testified that she saw the cash bags in the box but did not examine their contents or remove any money. She testified that she did not remove any more money, change the bands on the money, or open the box at any other time. She claimed to not know what happened to the rest of the money.

Toni Compton testified that some of the purchases her son described were old purchases and that the money for other recent home improvements came from her occasional employment, their income tax refund, her husband's bonus pay, and their savings. She testified that the cement mixer cost around $100 and that the water filtration system was only partly paid for. She said they paid about $5500 for the metal barn/workshop from her husband's bonus. She testified that the furniture was several years old as were some other purchases. Toni Compton also testified that her father had given her $2000 to complete a project to weather-proof the house and to prevent rats from getting underneath the house.

Johnny Compton testified that he did not participate in the critical events. He sat at the table during the discussion about the disposition of the house sale proceeds and said at trial that he recommended investment, but Mary Sesso rejected the idea in favor of keeping the cash available.

He testified that he had no involvement with the safe deposit box and did not participate in prepurchase discussions about the Suburban. He claimed that he drove the Suburban occasionally, but only in his wife's company. He flatly denied telling anyone that he was making a payment on the Suburban, much less stating the amount. He testified that the redwood deck was about five years old and was paid for with income tax money. He said that the wooden floor was paid for by an income tax refund and his bonus. Johnny Compton testified that, in addition to working for Verizon as a manager of outside plant construction, he raised and sold goats. He estimated that they netted about $3500 from the goats in 2002 and that the funds were put in a separate ranch bank account to be used for more goat-related expenses.

Johnny Compton testified that they had three bank accounts: the ranch account, a checking account, and a savings account. He and his wife shared the accounts, putting their income into the joint checking account and paying for household expenses from that account. He could not explain where money for deposits in the joint accounts during the early months of 2003 came from when his wife was not working, but speculated that it could have come from goat sales. He said that both he and his wife balance the checkbook.

Johnny Compton testified that Mary Sesso told him that his wife had a key to the safe deposit box for emergencies. He also knew that Toni Compton opened the box to get the cash for the vehicle and to retrieve and replace jewelry, but could not remember the exact dates.

The trial court found that Toni Compton had a fiduciary relationship with her mother and breached her responsibilities, committing fraud and constructive fraud, by taking cash from the safe deposit box. The court found that Johnny Compton knew or should have known about that fraud but accepted the benefits of it. The court assessed actual damages of $72,448.24 against Toni

7

Compton for the amount missing from the box, plus pre- and post-judgment interest. The court assessed exemplary damages against Toni Compton. The court placed a constructive trust on the Suburban, which was undisputedly purchased with funds from the box. The court also found Johnny Compton partly culpable for knowledge or participation in the fraud, and held him jointly and severally liable for the price paid for the Suburban, $26,244.60. On appeal, the Comptons challenge the damage awards against them, while Mary Sesso challenges the limitation of the actual damages award against Johnny Compton.

Specifically, the Comptons challenge the trial court's findings and conclusions that (1) they used $28,133.60 from the safe deposit box to purchase a Suburban, which was placed in Toni Compton's name and used by both Comptons as a family vehicle, (2) Johnny Compton benefitted from the purchase and use of the Suburban, (3) Johnny Compton knew or should have known that Toni Compton stole funds from Mary Sesso, (4) Toni Compton committed fraud and constructive fraud against Mary Sesso, (5) by accepting the benefits of Toni Compton's fraud, conversion, and theft, Johnny Compton participated in these acts, (6) the Comptons would be unjustly enriched if the Suburban remained in Toni Compton's name, and (7) Johnny Compton is jointly and severally liable for $26,244.60 of the $72,448.24 principal judgment. Mary Sesso argues by cross-appeal that Johnny Compton should be jointly and severally liable for the entire amount of the judgment, rather than just a portion of it.

**ANALYSIS**

The Comptons contest the factual sufficiency of the evidence that Toni Compton committed a breach of fiduciary duty or fraud against Mary Sesso. They also challenge the

8

sufficiency of the evidence to support the damage amount. They cite gaps in evidence about the amount of money placed in the box and times during which other people had access to the money. They point to evidence that the Sessos kept the money overnight before renting the box and that Lynn Compton was at his grandparents' apartment that night.

We review findings of fact by the court in the same manner as we view jury findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Ludwig v. Encore Med., L.P.*, 191 S.W.3d 296, 300 (Tex. App.—Austin 2006, no pet.). When reviewing a challenge to the factual sufficiency of the evidence, we must consider, weigh, and examine all of the evidence in the record. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We will set aside the verdict only if the evidence that supports the finding is so weak as to render the judgment clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not reverse even if we would find that the evidence preponderates toward a different answer. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). In a bench trial, the trial court, as fact-finder, is the sole judge of the credibility of the witnesses. *Buffington v. DeLeon*, 177 S.W.3d 205, 209 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We may not pass upon the witnesses' credibility or substitute our judgment for that of the fact-finder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). *But see City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (jurors cannot substitute their opinions for undisputed truth).

Breach of a fiduciary relationship can constitute fraud because the fiduciary relationship imposes higher duties, such as duties of good faith, candor, and "full disclosure respecting matters affecting the principal's interests and a general prohibition against the fiduciary's

9

using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal." *Flanary v. Mills*, 150 S.W.3d 785, 795 (Tex. App.—Austin 2004, pet. denied) (quoting *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no pet.)). At common law, the term "fraud" means an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage. *Chien*, 759 S.W.2d at 495. Common-law fraud includes both actual and constructive fraud. Actual fraud usually involves dishonesty of purpose or intent to deceive. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). Constructive fraud encompasses those breaches that the law condemns as fraudulent because they tend to deceive others, violate confidences, or cause injury to public interests, regardless of the actor's mental state. *Id*. When one has a duty to speak the truth, a false representation of a past or present material fact is fraudulent when another relies thereon to his detriment. *See Chien*, 759 S.W.2d at 495.

Appellants do not challenge that there was a fiduciary relationship between Mary Sesso and Toni Compton. They argue that gaps exist in the evidence regarding how much money was placed in the safe deposit box and who might have taken the money. We conclude, however, that sufficient evidence supports the court's findings that Toni Compton breached her fiduciary obligations to Mary Sesso by taking more than $70,000 in cash without permission. The undisputed evidence is that the Sessos received $73,549.25 in cash from the Del Rio bank, and that Mary Sesso put the full amount in the box. The evidence reflects that Toni Compton was the only person who accessed the box before June 2003. She admitted taking $30,000 in cash during the October 2002 visit, and there is evidence indicating that the cash remaining in the box was rebound at that time

10

with $1 bills used to fill out the bundles. In addition to the evidence that Toni Compton tried to conceal her removal of funds, when her son called to confront her about the missing funds, there is evidence that Toni Compton shouted to her husband that her son was lying. Toni Compton claimed to have her father's permission to take the $30,000, and denied knowledge of what happened to the remaining $40,000. There was disputed evidence regarding whether the Comptons made several large purchases between September 2002 and June 2003 that were inconsistent with their resources. The Comptons speculated that Mary Sesso originally placed less than the full amount in the box and that someone else—perhaps Mary Sesso or Lynn Compton—removed the money. The trial court made a credibility decision and chose to credit Mary Sesso's and Lynn Compton's version of events. The record does not support overturning that decision. We conclude that sufficient evidence supports the findings that Toni Compton committed fraud through breach of fiduciary duty.

Both sides challenge the court's conclusion that Johnny Compton is jointly and severally liable for the fraud to the extent that it involves the purchase of the Suburban. The court concluded that Johnny Compton knew or should have known that Toni Compton had taken money from the box without permission and that, because he benefitted from her wrongful taking of those funds, he equitably participated in that wrongdoing. The Comptons contend that Johnny Compton had almost no involvement in any of the relevant transactions and that he did not benefit from the purchase of the Suburban. Conversely, Mary Sesso contends that Johnny Compton should be held liable for all of the missing cash.

A party who benefits from a fraudulent transaction may be a principal in the fraud and may be held liable as such. *In re Arthur Andersen L.L.P.*, 121 S.W.3d 471, 481

11

(Tex. App.—Houston [14th Dist.] 2003, no pet.). A party can be liable for the fraudulent misrepresentations of a third party by mere silent acquiescence when he benefitted from the fraud. *Id.* (citing *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 924 (Tex. App.—Fort Worth 1994, writ denied); *Corpus Christi Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 202 (Tex. App.—San Antonio 1991, no writ)).

There is evidence that supports the court's findings that Johnny Compton was aware of the fraud and knowingly benefitted from it. The connection between the cash removed from the box and the purchase of the Suburban is undisputed. Johnny Compton benefitted by using it on the weekends with his wife. Although flatly denied, Lynn Compton's testimony that Johnny Compton said he was making payments on the Suburban is inconsistent with the idea that it was a fully-paid gift. Even if Johnny Compton was initially unaware that the purchase money for the Suburban was not a gift, he became aware on June 13, 2003, that others did not believe it was a gift. Factually sufficient evidence supports the trial court's findings that Johnny Compton accepted the benefits of Toni Compton's fraud despite his awareness of the fraud.

Nevertheless, the evidence also supports the court's judgment limiting Johnny Compton's liability to the purchase price of the Suburban. Unlike the clear evidence connecting the $30,000 taken by Toni Compton with Johnny Compton's beneficial use of the Suburban, there is not sufficient evidence to establish a clear connection between the remainder of the cash taken by Toni Compton (approximately $40,000) and a particular benefit received by Johnny Compton. There was testimony that the Comptons purchased several assets and improvements while Toni Compton had access to the box, but there was competing evidence that the purchases were made at other times or

12

with other funds. Further, there is no direct evidence that Johnny Compton participated in his wife's deceptive actions. The only evidence is of peripheral involvement in events surrounding the cash, such as his presence at the meeting when the funds were discussed and his awareness of the deposits made by Toni Compton between September 2002 and June 2003, at times when she had access to the box and was not otherwise earning an income. Yet, it is undisputed that Johnny Compton did not rent the safe deposit box, was not an authorized user, and did not open it. Thus, factually sufficient evidence supports the court's refusal to find that Johnny Compton benefitted from the remainder of the removed cash and that he knew of or acquiesced in that benefit. Accordingly, the record supports the court's refusal to hold Johnny Compton jointly and severally liable for anything more than the value of the Suburban.

## CONCLUSION

Having resolved all issues presented in favor of the judgment, we affirm the judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 21, 2006

13